# 24-685-cv(L)
## 24-802-cv(XAP), 24-1592-cv(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



RICHARD GRAJEDA,

*Plaintiff-Appellant-Cross-Appellee,*

*(Caption Continued on the Reverse)*

*On Appeal from the United States District Court
for the District of Vermont*

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT-CROSS-APPELLEE

Brian J. Isaac
POLLACK, POLLACK, ISAAC
 & DECICCO, LLP
250 Broadway, Suite 600
New York, New York 10007
212-233-8100

*Appellate Counsel to:*

Andrew J. Smiley
SMILEY & SMILEY, LLP
122 East 42nd Street, 39th Floor
New York, New York 10168
212-986-2022

*Attorneys for Plaintiff-Appellant-
 Cross-Appellee*



*v.*

VAIL RESORTS INC., VAIL RESORTS MANAGEMENT COMPANY,
OKEMO LIMITED LIABILITY COMPANY, d/b/a OKEMO MOUNTAIN RESORT,

*Defendants-Appellees-Cross-Appellants,*

ENE EVALUATOR,

*Defendant.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iv

PRELIMINARY STATEMENT ...........................................................1

JURISDICTIONAL STATEMENT ......................................................2

STANDARD OF REVIEW ..................................................................3

STATEMENT OF THE CASE...............................................................3

    A.  Introduction and Background......................................................3

    B.  The Underlying Accident ...........................................................5

    C.  The Pertinent Individuals Involved in the Litigation of the Case, the Parties' Attempts to Settle Same and Plaintiff's Subsequent Motion to Enforce the Settlement...............................6

    D.  The Settlement Offers and Counteroffers ...................................7

        1.  Defendants' Initial Settlement Offer....................................8

        2.  Plaintiff's Counteroffer to Defendants' Initial Written Offer ...................................................................................8

        3.  Defendants' Final Settlement Offer that was Made After the Jury Began Deliberations ................................9

        4.  The Actions of the Parties Subsequent to Defendants' Final Offer and Plaintiff's Ultimate Acceptance of Same .................10

        5.  Defendant's View of the Events Prior to the Verdict and Plaintiff's Retort as Set Forth in Plaintiff's Motion to Enforce the Settlement ........................................................16

        6.  The District Court's Denial of Plaintiff's Motion to Enforce the Settlement ........................................................32

i

QUESTIONS PRESENTED FOR REVIEW ............................................................37

DISCUSSION .............................................................................................................39

> POINT I
>
> UNDER VERMONT LAW SPECIFICALLY, AND
> AMERICAN CASE LAW GENERALLY, PLAINTIFF
> VALIDLY ACCEPTED A PENDING "FINAL SETTLEMENT
> OFFER" WHICH WAS NEVER WITHDRAWN AND
> PLAINTIFF'S STATEMENT THAT THE OFFER WAS
> "PULLED" AFTER THE JURY HAD REACHED A VERDICT
> DID NOT INVOKE THE DOCTRINE OF JUDICIAL
> ESTOPPEL BECAUSE THE STATEMENT WAS NOTHING
> MORE THAN A FACTUAL STATEMENT REFLECTING THE
> CIRCUMSTANCES THAT EXISTED AT THE TIME AND
> NOT A BINDING ADMISSION OF LAW .....................................................39
>
> > A.   Regarding the Applicable Law.............................................................39
> >
> > B.   Analogous Case Law Supports Plaintiff's Claim that he
> >      Accepted a Valid Settlement Offer Prior to the Time the
> >      Jury Formally Rendered its Verdict .....................................................46
>
> POINT II
>
> PLAINTIFF WAS NOT JUDICIALLY ESTOPPED FROM
> ACCEPTING DEFENDANTS' "FINAL SETTLEMENT
> OFFER" AS PLAINTIFF'S CONDUCT WAS NOT
> INCONSISTENT IN ANY WAY AND HIS ASSERTION THAT
> THE DEFENDANTS' SETTLEMENT OFFER HAD BEEN
> "PULLED" REPRESENTED A FACTUAL STATEMENT
> THAT WAS MADE AT A TIME AFTER THE SETTLEMENT
> WAS ACCEPTED ............................................................................................52

POINT III

IN THE EVENT THIS COURT FINDS THAT THERE IS AN
ISSUE OF FACT REGARDING WHETHER A VALID OFFER
WAS ACCEPTED BY THE PLAINTIFF, A REMAND TO THE
DISTRICT COURT TO TAKE EVIDENCE AT A HEARING IS
APPROPRIATE .................................................................54

CONCLUSION .................................................................57

PRINTING SPECIFICATIONS STATEMENT .....................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Altman v. Zwicker & Assoc., P.C.,
　2021 U.S. Dist. LEXIS 160958 [SDNY 2021]....................................42

Amara v. CIGNA Corp.,
　53 F.4th 241 [2d Cir. 2002] .................................................................2

Angel v. Tauch,
　642 S.W.3d 481 [Tex. 2002] ...............................................................42

Avery v. Estate of Avery,
　207 Vt. 570 [Sup. Ct. of VT 2018] ......................................................53

Bellasalma v. Colton RV, LLC,
　2023 U.S. Dist. LEXIS 124800 [WDNY 2023] ...........................29, 42

Benya v. Stevens & Thompson Paper Co.,
　143 Vt. 521 [Sup. Ct. of VT 1983] ..............................................40, 44

Brainard v. Van Dyke,
　71 Vt. 359 [Sup. Ct. of VT 1899] ........................................................43

C.E. Tackels, Inc. v. Fantin,
　341 Mich. 119 [Sup. Ct. of MI 1954] ..................................................48

Chester v. Weingarten,
　2013 Vt. Unpub. LEXIS 211 [Sup. Ct. of VT 2013].........................39

Ciaramella v. Reader's Digest Ass'n,
　131 F.3d 320 [2d Cir. 1997] .................................................................3

Coffman Industries, Inc. v. Gorman-Taber Co.,
　521 S.W.2d 763 [COA of MO. Kansas City Dist. 1975] ...................48

Dowling v. Hastings,
　211 NY 199 [1914] ..............................................................................20

iv

Edwards v. MABSTOA,
   252 AD2d 410 [1st Dept. 1998] ...........................................................20

Ellis Admr. v. Durkee,
   79 Vt. 341 [Sup. Ct. of VT 1906] .......................................................43

Elysium Health, Inc. v. Chromadex, Inc.,
   2023 U.S. App. LEXIS 28466 [2d Cir. 2023] ......................................3

Evarts v. Forte,
   376 A2d 766 [Sup. Ct. of VT 1977] ...................................................39

Farley v. Security Ins. Co.,
   331 Ill. App. 448 [App. Ct. of Ill 1st Dist. 1947] ...............................45

Farrell v. Labarbera,
   181 AD2d 715 [2d Dept. 1992] ..........................................................20

Felberbaum v. Sequium Asset Solutions, LLC,
   2023 U.S. Dist. LEXIS 5619 [SDNY 2023]............................20, 22, 42

Fleurrey v. Vt. Dep't of Aging & Indep. Living,
   2023 Vt. Super. LEXIS 100
   [Sup. Ct. of VT, Lamoille Unit, Civ. Div. 2023]................................45

Gallipo v. City of Rutland,
   173 Vt. 223 [Sup. Ct. of VT 2001] .....................................................53

Goulet v. USAA Ins. Agency,
   2020 ME Super. LEXIS 69
   [Sup. Ct. of ME, Penobscot County 2020] ...................................29, 42

Harris v. Roberts,
   2007 Phila. Ct. Com. Pl. LEXIS 325
   [Com. Pleas Ct. of Phila. Cty, Penn. Civ. Tr. Div. 2007]...................50

Hill v. Bell,
   111 Vt. 131, 11 A2d 211 [Sup. Ct. of VT 1940] ...............................40

In re Chittenden Solid Waste Distribution,
   2007 Vt. 28 [Sup. Ct. of VT 2007] ....................................................53

In re: O'Meara,
    193 Vt. 671 [Sup. Ct. of VT 2013] ....................................................20

Jennings v. Hatfield,
    2005 Tex. App. LEXIS 8730 [COA of TX 14th Dist.
    Houston 2015], pet. for rev. den., 2006 Tex. LEXIS 239
    [Sup. Ct. of TX 2006] ....................................................................50

Kirkland v. Sunrise Opportunities,
    200 F.R.D. 159 [Dist. of ME 2001] .........................................29, 42

Knaresborough Enters., LTD. v. Dizazzo,
    214 Vt. 32 [Sup. Ct. of VT 2021] ...................................................53

Miller v. Flegenheimer,
    203 Vt. 620 [Sup. Ct. of VT 2016] .................................................43

Moore v. Donegal Mut. Ins. Co.,
    247 MD. App. 682 [Ct. of Spec. App. of MD 2020].................50, 51

Nev. Yellow Cab Corp. Eighth Judicial Dist. Court of Nev.,
    152 P3d 737 [Nev. 2007] .................................................................45

New Dance Group Studio v. St. Paul Fire & Marine Ins. Co.,
    1995 U.S. Dist. LEXIS 10205 [SDNY 1995].................................46

New Eng. Fire Ins. Co. v. Haynes,
    71 Vt. 306 [Sup. Ct. of VT 1899] ...................................................43

Noce v. Kaufman,
    2 NY2d 347 [1957] ..........................................................................20

Nordic Windpower USA, Inc. v. Jacksonville Energy Park, LLC,
    2012 U.S. Dist. LEXIS 55552 [Dist. of VT 2012] .........................30

Okemo Mountain v. Okemo Trailside Condominiums,
    139 Vt. 433, 431 A2d 457 [1981].....................................................44

Over & Under Piping Contrs., Inc. v. Vt. Gas Sys.,
    2019 U.S. Dist. LEXIS 807 [Dist. of VT 2019];
    motion for reconsideration denied, 2019 U.S. Dist.
    LEXIS 242310 [Dist. of VT 2019] .......................................26, 40, 41

Perrino v. Bimasco, Inc.,
234 AD2d 281 [2d Dept. 1996] ........................................................................51

Powell v. Omnicom,
497 F.3d 124 [2d Cir. 2007] ............................................................................40

Price v. Bowen,
183 Vt. 572 [Sup. Ct. of VT 2008] ................................................................45

Purrington v. Grimm,
83 Vt. 466 [Sup. Ct. of VT 1910] ..................................................................40

Quenneville v. Buttolph,
175 Vt. 444 [Sup. Ct. of VT 2003] ................................................................39

R.E. Crummer & Co. v. Nuveen,
147 F.2d 3 [7th Cir. 1945] ..............................................................................44

Rogers v. Rogers,
135 Vt. 111, 373 A2d 977 [Sup. Ct. of VT 1977] .........................................39

Roy v. Town of Tinmouth,
2008 Vt. Super. LEXIS 29 [2008] ..................................................................41

Rule v. Tobin,
168 Vt. 166 [Sup. Ct. of VT 1998] ..........................................................39, 40

Ryniker v. Sumec Textile Co. Ltd. (In re Décor Holdings, Inc.),
86 F.4th 1021 [2d Cir. 2023] ............................................................................3

Sherrod v. Kidd,
155 P3d 976 [COA of Wash. Div. 3 2007] ....................................................50

SKI, Ltd. v. Mountainside Props.,
198 Vt. 384 [Sup. Ct. of VT 2015] ................................................................44

Spratley v. State Farm Mut. Auto Ins. Co.,
2003 UT 39 [Sup. Ct. of UT 2003] ................................................................45

Starr Farm Beach Campowners Ass'n v. Boylan,
175 Vt. 503 [Sup. Ct. of VT 2002] ................................................................40

State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.,
 72 Cal. App. 4th 1422 [COA of CA 5th Dist. 1999]..........................................45

Stinson v. Union Mut. Fire Ins. Co.,
 2003 Vt. Super. LEXIS 33 [Sup. Ct. of VT, Orange Unit,
 Civ. Div. 2019] ...................................................................................44, 45

Sweet v. St. Pierre,
 209 Vt. 1 [Sup. Ct. of VT 2018] ........................................................43

Uckele v. Harris,
 2013 Vt. Unpub. LEXIS 212 [Sup. Ct. of VT 2013].....................................5, 43

United States v. Rizzo,
 349 F.3d 94 [2d Cir. 2003] ................................................................3

Unleaded Software, Inc. v. TNF Gear, Inc.,
 202 Vt. 656 [Sup. Ct. of VT 2016] .................................................44, 45

Vaughan v. Tetzlaff,
 141 Vt. 150, 446 A2d 356 [1982].............................................5, 21, 40

Vermont Agency of Natural Resources v. Towns,
 168 Vt. 449 [Sup. Ct. of VT 1998] ...............................................44, 45

Viola v. Krouse,
 2013 PA Super. Unpub. LEXIS 3855 [Sup. Ct., Pen., 2013]...........................55

Wal-Mart Stores Tex. LLC v. Shirey,
 2020 Tex. App. LEXIS 945
 [COA of TX 14th Dist. Houston 2020] ...............................................48

Wark v. Zucker,
 214 Vt. 605 [Sup. Ct. of VT 2021] ....................................................43

Winston v. Mediafare Entertainment Corp.,
 777 F.2d 78 [2d Cir. 1985] ......................................................26, 40, 41

Yaros v. Trustees of the Univ. of Pa.,
 1999 PA Super 303 [Sup. Ct. of PA 1999]................................................*passim*

**Statutes**

28 USCA § 1291 ...................................................................................3

**Other Authorities**

Restatement (Second) of Contracts, § 36(1) ........................................41

Restatement (Second) of Contracts § 42, Comment C ...........................22

Restatement (Second) of Contracts, § 43 ........................................29, 42

Williston on Contracts, 4th, § 5.9 ......................................................30

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

--------------------------------------------------------------------X **Docket No. 24-685**

RICHARD GRAJEDA,                                                                                      **24-802**

                                                                                                                   **24-1592**

                              Plaintiff-Appellant-Cross-Appellee,

                                                                                                              **PLAINTIFF'S**

            -against-                                                                                    **APPELLANT-**

                                                                                                              **CROSS-APPELLEE**

VAIL RESORTS INC., VAIL RESORTS                                    **BRIEF**
MANAGEMENT COMPANY, OKEMO LIMITED
LIABILITY COMPANY, OKEMO LIMITED
LIABILITY COMPANY, d/b/a OKEMO
MOUNTAIN RESORT,

                           Defendants-Appellees-Cross-Appellants,

ENE ELEVATOR,

                           Defendant
--------------------------------------------------------------------X

## PRELIMINARY STATEMENT

        Plaintiff-appellant, Richard Grajeda, III (the "plaintiff"), respectfully submits

this brief in connection with the appeal (2923)[1], from the order of the United States

District Court, District of Vermont (Reiss, J.) dated June 10, 2024 (2919-2922)

which denied plaintiff's motion to enforce a settlement of a personal injury case that

plaintiff litigated against defendants Vail Resorts, Inc., Vail Resorts Management

Company and Okemo Limited Liability Company d/b/a Okemo Mountain Resort

---

[1] Numbers in parenthesis refer to pertinent pages of the appendix.

1

(the "defendants"), based upon what plaintiff claims was a timely acceptance of a pending offer to settle.

For the reasons set forth herein, it is respectfully submitted that the District Court's order denying plaintiff's application to enforce the settlement constituted plain error under the governing case law from this Court and various other appellate courts that have considered the issue.

## JURISDICTIONAL STATEMENT

As set forth above, the plaintiff appeals from a post-trial order that refused to enforce an agreed-upon settlement between the parties in this personal injury action. Previously, plaintiff moved for an extension to file a brief and appendix from a final judgment entered in this action on February 23, 2024, consolidating plaintiff's appeal from the subject order denying plaintiff's application to enforce the settlement with an appeal from the previously filed judgment and for an extension of time to perfect both appeals. Plaintiff  posited that the post-judgment order was final as it "has finally disposed of (a) question, and there are no pending proceedings raising related questions" (Amara v. CIGNA Corp., 53 F.4th 241, 249 [2d Cir. 2002]), or that it could be considered under the "collateral order doctrine" because the subsequent order "conclusively determine[d] the disputed questions to resolve an important issue completely separate from the merits of the action, and (is) effectively

2

unreviewable on appeal from a final judgment" (<u>Ryniker v. Sumec Textile Co. Ltd.</u> <u>(In re Décor Holdings, Inc.)</u>, 86 F.4th 1021, 1026 [2d Cir. 2023])).

This Court, in an order dated June 21, 2024, denied the motion as "unnecessary" and extended plaintiff's time to perfect this appeal. As such, this Court has jurisdiction over this appeal pursuant to 28 USCA §1291 as a matter of both law and established fact.

<h2 style="text-align:center">STANDARD OF REVIEW</h2>

In an appeal from a District Court's order enforcing a settlement agreement, the appellate court reviews the District Court's findings of law under a de novo standard, and its factual conclusions under a clearly erroneous standard of review. (<u>Elysium Health, Inc. v. Chromadex, Inc.</u>, 2023 U.S. App. LEXIS 28466 [2d Cir. 2023]; <u>Ciaramella v. Reader's Digest Ass'n</u>, 131 F.3d 320, 322 [2d Cir. 1997]). "A finding of fact is clearly erroneous if the appellate court is left with a definite and firm conviction that a mistake has been committed" (<u>United States v. Rizzo</u>, 349 F.3d 94, 98 [2d Cir. 2003]).

<h2 style="text-align:center">STATEMENT OF THE CASE</h2>

**A.  Introduction and Background**

To put it simply, the issue in this case is whether plaintiff's acceptance of an open offer of settlement that was "on the table" for 6 ½ to 7 hours after it was originally made, when the jury began its deliberations and before the jury returned

its verdict, created a binding settlement agreement. Under the governing case law, including that of Vermont where this case was adjudicated, the answer to this question is a resounding "yes."

Plaintiff counsel's acceptance of an open offer of settlement created a binding settlement because the acceptance was made within a "reasonable time;" there was never a clear and unambiguous revocation or withdrawal of the offer; and plaintiff's counsel accepted the offer before the jury rendered its verdict (2735, 2742, 2748, 2750).

A second issue, dealing with syntax and linguistics, is whether a statement by plaintiff's counsel on the record after the settlement was accepted, to the effect that the defense offer was "pulled" before counsel had "an opportunity to accept it" (2761) constitutes an admission, either explicit or implicit, that there was no binding settlement. The record shows that the statement of plaintiff's counsel to the court reflected nothing more than an acknowledgement of the fact that when counsel sought to confirm the settlement with the carrier, *after* plaintiff had accepted it to defense counsel, the defendants' carrier refused to confirm the settlement and directed trial counsel to "receive the verdict" resulting in plaintiff's counsel advising the Court that the settlement was "apparently just pulled" before he was afforded the opportunity to speak with the carrier.

This act did not and, more importantly, could not retroactively invalidate plaintiff's counsel's prior acceptance of an open offer to settle. Indeed, the Vermont Supreme Court, in Vaughan v. Tetzlaff, 141 Vt. 150, 154, 446 A2d 356 [1982], specifically held that the "time for measuring a 'meeting of the minds' is the point of agreement, not performance." As well, it has been held that a valid settlement agreement that was accepted by a party could not be revoked for "buyer's remorse" (Uckele v. Harris, 2013 Vt. Unpub. LEXIS 212 [Sup. Ct. of VT 2013]).

## B.    The Underlying Accident

There is no dispute that plaintiff, who was 25 at the time of trial and 21 at the time of the accident (163), was injured on a beginner's trail known as "Open Slope" at the Okemo Resort on December 19, 2019 (165-181). Plaintiff was an inexperienced skier and fell while skiing on this beginner trail. Subsequent to the fall, plaintiff slid into an improperly padded snowmaking gun in the middle of a beginner trail.

Plaintiff's theory of liability was that the defendants were negligent in placing a snow gun in the middle of a beginner trail and were further negligent in not padding the snow gun properly so that it was flush with the snow surface. As a result, the defendants created a gap which the plaintiff fell into directly crashing into a 4-inch diameter unprotected steel pipe, immediately fracturing his vertebrae and severing his spinal cord rendering him paraplegic (60-80).

5

As the Court can see from the appendix, the case was tried before the District Court from February 1 to February 16, 2024 (2735). After defendants' repudiated plaintiff's acceptance of the pending "final" settlement offer (2813-2814), the jury returned a defense verdict (2816-2817). Plaintiff submits that this was an improper reneging of a binding settlement and that his post-trial motion to enforce the settlement (2716-2733) should have been granted.

In this regard, the record shows that there were a series of settlement offers and negotiations that preceded the "final offer" of settlement that plaintiff accepted before the jury returned a defense verdict. While these offers/negotiations will be fully adumbrated below, for the sake of continuity, we set forth for the Court the names of attorneys and representatives who were involved in the negotiations for overall context.

**C.    The Pertinent Individuals Involved in the Litigation of the Case, the Parties' Attempts to Settle Same and Plaintiff's Subsequent Motion to Enforce the Settlement**

Plaintiff, at trial, was represented by four attorneys from Smiley & Smiley, LLP: Andrew J. Smiley ("A. Smiley"), (2734-2740), his father, Guy I. Smiley ("G. Smiley"), (2741-2743), Jason D. Friedman ("Friedman") (2744-2746) and Michael S. Solomon ("Mr. Solomon") (2747-2749).[2]

---

[2] These attorneys will sometimes hereinafter be referred to as "plaintiff's counsel."

Daniel Mitchell ("Mr. Mitchell") was a representative of AIG Insurance Company, a carrier that represented the defendants. Thomas Aicher, Esq. ("Mr. Aicher") and Craig May, Esq. ("Mr. May") represented defendants as counsel (2735).[3] As well, Joy Posner ("Ms. Posner"), a representative of AXA XL, acted as a representative of the carriers during the trial (2735).

The District Court afforded the parties a fair and impartial trial which is why the issue on this appeal is limited to the enforceability of the settlement.

**D.    The Settlement Offers and Counteroffers**

The record shows that there were a number of offers, counteroffers and intermittent negotiations that led to the final settlement offer that plaintiff ultimately accepted. Some of the offers were set down in writing while others were communicated orally. Plaintiff, below, provides the Court with a temporal timeline of those offers.

It should be noted that because all settlements were to be confidential in nature, the parties have blocked out the amounts of the offers and proposed counteroffers in the appendix. If the Court is so inclined, plaintiff can reveal the amounts of the offers either in camera or by any other means deemed appropriate by the Court.

---

[3] Messrs. Aicher and May will sometimes hereinafter be referred to as "defendants' counsel."

### 1. Defendants' Initial Settlement Offer

A verbal pretrial settlement offer was rejected by the plaintiff (2735). During trial, Mr. Mitchell, on behalf of AIG Insurance Company, hand-delivered to A. Smiley a letter increasing the pretrial offer to settle plaintiff's claims (2753-2754). The letter sets forth a proposed settlement amount (redacted) and required, as a condition of the settlement, that plaintiff execute a hold harmless and indemnity in favor of defendants and the latter's agents for all claims or liens arising from the litigation, comply with Medicare rules regarding liens and set asides, agree to confidentiality and acceptance of payment within 60-days of receipt of an executed release and adhere to certain particulars with respect to the structuring of a settlement, if requested by plaintiff (2753-2754).

### 2. Plaintiff's Counteroffer to Defendants' Initial Written Offer

On February 12, 2024, plaintiff drafted a letter to defense counsel in the form of a counteroffer (2735). The counteroffer was in writing and is contained in the record (2755-2758). As plaintiff's lead counsel, A. Smiley, set forth in his February 19, 2024, declaration, the "plaintiff's counteroffer was solely to counter the amount of the settlement and did not object to any of the specific terms of the settlement proposed in (Mr. Mitchell's) February 9th letter which included terms such as confidentiality and timeframe for payment" (2735). Of pertinence with respect to the counteroffer was plaintiff's counsel's recitation of substantial evidence in the trial

8

record that supported the propriety of plaintiff's claims which led A. Smiley to conclude that defendants' assertion that there were "differing opinions" as to whether liability existed was not, in fact, an accurate reflection of the record (2755-2757). In this regard, plaintiff's special damages, independent of any pain and suffering, ranged from slightly over $6.6 million at the low end to just under $8,000,000 at the high end (2757).

A. Smiley confirmed that plaintiff "did not receive a written or verbal response to the counteroffer prior to closing arguments on February 16" (2735).

### 3. Defendants' Final Settlement Offer that was Made After the Jury Began Deliberations

As plaintiff's counsel affirmed (2735-2736, 2742-2743, 2745-2746, 2748-2749), after jury deliberations began at 2:30 PM on February 16th, all the parties and counsel left the courtroom. At that point, Mr. Mitchell and Ms. Posner approached plaintiff-counsel's team to discuss resolution of the case by means of a new settlement offer that included a "high-low" option. This conversation took place around the security desk by the elevators of the 5th floor of the courthouse (id.). The offer represented an increase of defendants' February 9th offer and included two parts; an offer to settle the case for a sum certain or a high-low settlement that would cap damages based upon the jury's verdict (2735-2736).

Plaintiff next describes the events that transpired after the defendants' final settlement offer was communicated to counsel after jury deliberations began at 2:30 PM on the afternoon of February 16, 2024.

### 4. The Actions of the Parties Subsequent to Defendants' Final Offer and Plaintiff's Ultimate Acceptance of Same

There is a general consensus regarding what transpired after defendants' insurance carrier made the final offer that plaintiff ultimately accepted. The most detailed testimony is contained in the declaration of A. Smiley (2734-2740). However, the declarations of G. Smiley (2741-2743), Mr. Friedman (2744-2746) and Mr. Solomon (2747-2749) confirm the propriety of A. Smiley's contentions. As well, the plaintiff himself (2750-2752) submitted an affidavit that bears upon this issue significantly.

A. Smiley affirmed that after the increased final offer was made by defendants, same was relayed to the plaintiff directly (2736), a fact confirmed by the plaintiff (2750-2751). A. Smiley stated that after the new settlement offer was communicated to the plaintiff, he subsequently "continued to negotiate with (Mr. Mitchell and Ms. Posner) in an attempt to resolve the case for a sum higher than the Final Offer." He further represented that at no time did any of the defendants' representatives "indicate that the offer would ever expire or be withdrawn from the moment the Final Offer was made to plaintiff, up to and including the time of Plaintiff's acceptance of the Final Offer" (2736).

While the jury continued to deliberate for the afternoon, A. Smiley "had at least three additional conversations with (Ms. Posner) outside the plaintiff's conference room on the 5th floor." He advised the latter that "plaintiff was 'struggling with the decision to accept' the Final Offer." As such, he requested "an increase in the Final Offer to settle the case" but was advised by Ms. Posner on each occasion that "despite her efforts in speaking with (Mr. Mitchell), defense counsel, and unknown individuals at Vail, they were sticking to their final offer and would not increase it" (2736). Significantly, Ms. Posner "never advised that the Final Offer had a deadline, or expiration time, or that it would be withdrawn." To that end, Ms. Posner "left the courtroom to drive back to her home as evening approached" and she advised A. Smiley "to let (Mr. Mitchell) know if the client would accept the Final Offer and that she 'hoped he would take it'" (2736).

Thereafter, A. Smiley had "informal discussions" with Mr. Aicher, defense counsel. A. Smiley informed Mr. Aicher that plaintiff "was really struggling with whether to accept the Final Offer" (2736).

Plaintiff affirmed that he never rejected the "Final Offer", and he also confirmed that plaintiff's counsel asked Ms. Posner if "the Defendant would consider a high-low with different parameters", but he was informed by A. Smiley that defendants were sticking to their position such that "the Final Offer was their best and final offer" (2751). Plaintiff was never told that there was a "time limit

11

placed on that Final Offer." He also confirmed that he was "struggling with the offer" but stated that he never "rejected" same (2751).

The use of the term "struggling" to describe plaintiff's mental state is significant here. It confirms the clear inference that because plaintiff, who was 21 at the time of the accident and 25 at the time of trial, faced a future that was going to be extremely difficult because of his paralysis, the defense offer, though substantial, was not sufficient in his mind to cover his needs from both a medical, pain and suffering and compensatory standard.[4]

Things changed at 8:30 PM, approximately 6 hours after the jury began deliberating. As A. Smiley affirms, "the parties were advised that the jury was at a possible impasse. After the Court charged the jury regarding an impasse, I knocked on the defense team's conference room door. Craig May, Esq. answered the door, and I asked him if (Mr. Mitchell) was available to speak. Mr. Mitchell came out of the defense conference room with his coat on and advised me that he was going to leave the courthouse for his hotel and that he would be flying home the following morning" (2736-2737). Mr. Mitchell told A. Smiley that the defense team was "not considering any increases to their Final Offer but would be open to further discussion if we learned later in the evening that the jury was hung at a further impasse" (2737).

---

[4] Again, because confidentiality was always a part of the settlement, plaintiff is not mentioning any settlement amounts here and the record has been redacted to preserve that element of the settlement.

At this time, A. Smiley advised Mr. Mitchell that the plaintiff was still "struggling" with whether he would accept the final offer before the jury returned a verdict, to which Mr. Mitchell responded, "I understand this is a difficult decision for him" (2737). A. Smiley specifically asked Mr. Mitchell if his "Final Offer would be withdrawn if the jury came back as a hung jury due to the impasse" and Mr. Mitchell responded that the offer remained "the same and (the defense) position has not changed and that I could reach out to him on his cell phone at any time as the jury continued deliberating into the evening" (2737).

As well, Mr. Mitchell informed A. Smiley that he would be reachable for 12 more hours until he was scheduled to leave the State by plane (2737).

Subsequently, the parties were advised that a jury verdict had been reached and that the judge was going to call the jury into the courtroom to read the verdict. At that time, prior to the jury entering the courtroom, plaintiff confirmed to A. Smiley that he would accept the final offer of settlement and A. Smiley then advised defense counsel that plaintiff was "accepting the Final Offer and wanted to settle the case before the verdict" (2737). Plaintiff confirmed that state of events (2751) as did plaintiff's litigation counsel team (2742-2743, 2745-2746, 2748-2749).

However, defense counsel was unwilling to confirm the settlement on the record. Thereafter, at approximately 9:13 PM (2737, 2719-2720), A. Smiley stated the following on the record: "Because the jury is out there. Our client, there was an

offer that our (client) wants to accept before the verdict and he just told us that he wants to accept it and wants me to call the claims adjuster … to take the offer." Subsequently, A. Smiley "stepped out" of the courtroom to contact Mr. Mitchell after personally reiterating to defense counsel that plaintiff had accepted the offer (2719, 2738).

In this regard, the District Court judge informed counsel "we are not going to hear the verdict … you agree with this, Mr. Aicher." The latter responded, "I am not in the loop", which led the judge to inquire, "who's in the loop? So, I need to know, offer and acceptance right now before we call off the verdict." Mr. Aicher then stated, "none of us have any authority that I am aware of, but he has access to", after which A. Smiley confirmed that he had a telephone number for Mr. Mitchell and that he was going to call to confirm the settlement. After requesting permission to "step out and call", to which the Court responded, "you need to do this now," A. Smiley asked Mr. May to "come with me so we're on the phone together" (2719, 2738).

Thereafter, Mr. May and A. Smiley made numerous attempts to reach Mr. Mitchell but were unsuccessful (2719-2720, 2738). A. Smiley affirmed that while he and Mr. May were attempting to reach Mr. Mitchell, Mr. May stated that if the settlement was placed on the record, the amount could not be stated because it was confidential, a statement that A. Smiley agreed represented a material term of the

settlement (2738). The record reveals that A. Smiley called Mr. Mitchell's cell phone 4 times between 9:18 and 9:20, a fact confirmed by phone records (2738, 2760).

A. Smiley and plaintiff's team were frustrated with their inability to contact the carrier to confirm the settlement so that same could be put on the record and the jury disbanded. To that end, A. Smiley was told by Mr. May that he would attempt to contact Mr. Mitchell directly. After originally stating that Mr. Mitchell would call A. Smiley back, Mr. May went into the defense conference room and closed the door leaving A. Smiley outside. After speaking privately with Mr. Mitchell, despite A. Smiley's expectation that the settlement would be confirmed, Mr. May exited the conference room telling A. Smiley "I have been directed to receive the verdict" (2738-2739).

A. Smiley was "stunned" by these events. Thereafter, both teams of attorneys returned to the courtroom. The Court specifically inquired of counsel "do we have a settlement", to which A. Smiley replied, "apparently it was just pulled …". Thereafter, the Court asked A. Smiley "before you had an opportunity to accept it?", to which A. Smiley responded "yes. Your Honor" (2739, 2761).

As such, despite plaintiff's "expectation" that there was a fully enforceable and proper settlement, the defense decided, behind closed doors, to ignore plaintiff's acceptance of the "Final Offer" despite the fact that the acceptance occurred in open court before any jury verdict was rendered (2739).

This sequencing of events shows that A. Smiley's statement was *not* an admission that the settlement had been "pulled", but rather a factual statement that pointed out that defendants decided to "renege" on the offer of settlement after same had been accepted and prior to the time it was withdrawn. Significantly, at no time was the final offer of settlement that was made by defendants some 6 ½ to 7 hours earlier explicitly withdrawn despite defendants' claims to the contrary.

The jury subsequently returned a defense verdict (2739). Plaintiff submits that under the relevant case law, plaintiff duly accepted a pending offer of settlement, prior to the jury verdict and within a reasonable time. This mandates a finding that there was a binding settlement agreement in accordance with basic law dealing with contracts and stipulations of settlement.

### 5. Defendant's View of the Events Prior to the Verdict and Plaintiff's Retort as Set Forth in Plaintiff's Motion to Enforce the Settlement

Unsurprisingly, defendants now take the position that there was no binding settlement because there was no pending offer to settle the case that plaintiff could accept. These claims were adumbrated by the parties at length with respect to plaintiff's motion to enforce the settlement (2716-2771), a motion that was vigorously opposed by defendants (2772-2826). The record also contains plaintiff's reply papers (2826-2848) and sur-reply papers submitted by defendants (2849-2860). The parties claims and contentions are discussed fully in this section of the brief.

16

Mr. Mitchell encapsulated the defense position in a short 3-page declaration (2820-2822). Mr. Mitchell confirmed that he was the "Senior Complex Director" of "Excess Casualty" at "AIG Claims Inc." He was the representative assigned to handle plaintiff's claim and beginning on February 2, 2024, through jury deliberations of February 16, 2024, he was present at trial to observe the proceedings and to engage in settlement negotiations. He claimed that defense counsel did not have authority from the insurance carrier to settle plaintiff's claim and that neither were involved in negotiations at any point during the trial (2820).

Mr. Mitchell stated that at around "2:32 p.m. on February 16, 2024, after the jurors began their deliberations" he met with plaintiff's counsel to discuss a potential settlement. Ms. Posner of AXA, an excess carrier that was also providing coverage for the defendants, was present as was plaintiff's litigation team. At that time, he made a "Final Offer" to settle the case and also offered figures for a proposed hi-low agreement.

Mr. Mitchell affirmed that at approximately 4:45 PM, jurors asked for a read back of certain testimony regarding the former head of snowmaking for the ski resort and the sole eyewitness to plaintiff's accident. At around 6:11 PM, the jurors sent a note asking for "clarity on certain terms" contained in the jury interrogatories dealing with the applicability of defendants' negligence and the "Vermont Sports Injury Statute." According to Mr. Mitchell, he viewed the jury notes as evidence that the

latter "were still debating the question of defendants' liability" (2821); he then claimed, somewhat illogically, that he considered this a "positive development for defendants" (2821).[5]

Mr. Mitchell went on to affirm that after the 6:11 PM note, A. Smiley asked to speak to Ms. Posner privately, after which Ms. Posner had several conversations with A. Smiley in which "she reiterated the final offer and an additional high-low proposal." It was his "understanding" that Ms. Posner "also expressed her view that plaintiff should accept the Final Offer because of the questions concerning liability and the prospect of a defense verdict which would leave (plaintiff) with nothing" (2821). Mr. Mitchell went on to state that A. Smiley "did not accept the Final Offer" adding that he "continued to seek a settlement higher than the Final Offer" (2820-2821). During this time period, Mr. Mitchell "remained in the courthouse so that I would be available to Mr. Smiley if he wished to speak to me directly concerning a potential settlement" (id.).

Subsequently, at 8:20 PM, the jury sent a note indicating that they were at an impasse which Mr. Mitchell took to mean that the jurors were addressing the

---

[5] In fact, the jury did not find that the Vermont Sports Injury Statute precluded the plaintiff from recovering. Experienced counsel, whether on the appellate or trial level, know that interpreting how a jury or appellate court would rule on an issue is nothing short of folly. In this regard, there have been many cases where jurors quickly deliberate and render a verdict in favor of the plaintiff and other cases where even after long deliberations in which the jurors ask questions about damages a defense verdict ensues.

question of defendants' liability because he did not believe "that they would send such a note if they were addressing the amount of plaintiff's damages" (2821). Mr. Mitchell, again, and somewhat gratuitously, stated that he viewed this as a "positive development" (2821).

Mr. Mitchell noted that the District Court gave the jurors a "modified Allen charge" after which "Mr. Smiley asked to speak with me privately, which we did" (2821). Mr. Mitchell recounted that "at no time during this conversation did I tell Mr. Smiley that the Final Offer remained opened or available." Instead, "in view of the jury's notes, each of which made the prospect of a defense verdict more likely, I withdrew the final offer *by telling Mr. Smiley that I wanted to hear from the jury before having any further settlement talks* (emphasis ours)" (2821).

Plaintiff submits that this is nothing more than a clever play on words, designed to avoid the making of a false statement under oath and that it actually *supports* plaintiff's position that there was an extant settlement offer that was "on the table" and that had not been withdrawn. Given the sophistication of the parties, their obvious competence and their knowledge of the case, Mr. Mitchell could have simply stated that he withdrew the offer of settlement prior to plaintiff's acceptance of same expressly because he wanted to hear the jury verdict. Instead, in carefully crafted language, Mr. Mitchell claimed that he withdrew the final offer, not

19

expressly, but by virtue of the statement that he "wanted to hear from the jury before having any further settlement talks" (2821).

Mr. Mitchell's statement that he "wanted to hear from the jury before having any further settlement talks" is ambiguous and can be subject to numerous interpretations. However, there is no reasonable interpretation of that statement which would constitute a clear revocation of a significant "Final Offer" of settlement. As fully set forth in the Argument section, *infra*, a revocation must be clear, unambiguous and subject to no other reasonable interpretation (2828. See generally, Felberbaum v. Sequium Asset Sols., 2023 US Dist. LEXIS 5619 [SDNY 2023]).

Interestingly, the Vermont Supreme Court has expressly held that misrepresenting facts about a settlement can constitute professional misconduct warranting reciprocal disbarment. See, In re: O'Meara, 193 Vt. 671 [Sup. Ct. of VT 2013]. Relatedly, "where one party to an action, knowing the truth of a matter and controversy and having the evidence in his possession, omits to speak, every inference against him warranted by the evidence may be considered." See, Noce v. Kaufman, 2 NY2d 347, 353 [1957]; Dowling v. Hastings, 211 NY 199, 202 [1914]; Edwards v. MABSTOA, 252 AD2d 410, 413 [1st Dept. 1998]; Farrell v. Labarbera, 181 AD2d 715, 716 [2d Dept. 1992]. This doctrine of law applies in spades with respect to Mr. Mitchell's declaration especially in light of the fact that he did not

20

submit an explanatory affidavit setting forth the facts underlying defendants' claimed withdrawal of the final settlement offer though afforded the right and opportunity to do so.

Indeed, under black letter Vermont law that expressly provides that "the time for measuring a 'meeting of the minds' is the point of agreement, not performance" (see, Vaughan, 141 Vt. at 154), there can be little doubt that Mr. Mitchell's factual statement regarding his purported withdrawal of the pending final settlement offer, *after* Mr. May transmitted the plaintiff's acceptance of the Final Offer, proves plaintiff's claim that same was actually an illegal act of reneging on an accepted offer of settlement. Absent any proof that the pending settlement offer was revoked or withdrawn *prior to* plaintiff's acceptance of same *before* A. Smiley spoke to Mr. Mitchell, the record establishes indisputably and, as a matter of law, that plaintiff accepted a pending settlement offer that should have been enforced according to its material terms.

In the end, plaintiff submits that Mr. Mitchell's statement that "I withdrew the final offer by telling Mr. Smiley that I wanted to hear from the jury before having any further settlement talks" (2821) expressly fails to rebut plaintiff's claim that the

settlement offer remained open at the time it was accepted before the jury returned a verdict that Mr. Mitchell learned about at 9:18 PM (2821).[6]

Under basic tenets of contract law, there are two elements that must be satisfied for an effective revocation of an offer: (1) The revocation must be communicated to the offeree before acceptance (see, Restatement (Second) of Contracts §42, comment c, explaining that once an offer is accepted, "a purported revocation is ineffective.") and (2) The notice of the revocation must be clear, unambiguous and subject to no other reasonable interpretation. See, 2828-2829. See generally, <u>Felberbaum</u>, <u>supra</u>. Clearly there was no revocation of the offer in this case. The defendants/respondents do not even argue that there was ever a clear and unambiguous revocation of their offer. It is, plaintiff submits, wrong for the defendants to argue that a clear and unambiguous revocation was transmitted to the plaintiff when their own trial counsel was unaware of such withdrawal and where

---

[6] Plaintiff submits that so called "negative implication" evidence can be more probative than direct evidence in appropriate circumstances. In this regard, plaintiff is reminded of the famous Sherlock Holmes story where Holmes is mystified by a murder that occurred in the home of the victim who had a large dog that remained silent throughout the attack. Holmes deduced from this lack of evidence that the malefactor was someone who was known to the victim, a deduction that allowed him to solve the crime. Here, Mr. Mitchell could have said clearly and directly that he withdrew the settlement offer unequivocally at a specific point in time especially given his related assertion that the jury notes were positive for the defense, indicating a probability that a defense verdict would ensure. But he never made such a claim. Instead, he based his *conclusion* that the settlement offer was withdrawn specifically on the fact that he "wanted to hear from the jury before having any further settlement talks" (2821). As plaintiff showed above, when taken to its logical conclusion, this argument refutes itself.

Mr. May relayed the plaintiff's acceptance of the settlement offer to Mr. Mitchell prior to his reneging on it.

Defendants incorrectly posited below that plaintiff was "judicially estopped from claiming that there is an enforceable settlement" based on A. Smiley's assertion that the final offer had been withdrawn "before (he) had an opportunity to accept it" (2776), a statement that was allegedly "consistent with this admission, as he never objected to the defendants' withdrawal and did not object to the jury rendering its verdict" (id.). As plaintiff has shown, this assertion misrepresents the record in spades. A. Smiley's statement that there was no confirmable settlement that could be dictated into the record because same was withdrawn "before he had an opportunity accept it" was not, in any way, inconsistent with his statement that *before that time* he had accepted an unconditional offer that defendant subsequently "reneged" on (2739).

Indeed, the statements merely reflected the incontrovertible fact that a stipulation of settlement could not be put on the record not because the settlement offer was withdrawn, but because defendants' carrier refused to honor same. A. Smiley's observation that the offer of settlement had been "pulled" "before he had an opportunity to accept it" clearly referred not to his initial acceptance of the pending offer, but the subsequent series of events where the parties in the court were

prepared to put the settlement on the record after the jury informed the Court that it had reached a verdict which was yet to be published.

Contrary to defendants' claim, plaintiff was not seeking "two bites at the apple" but merely the ability to enforce an agreed upon settlement that was demonstrated by the careful language used by Mr. Mitchell in is affidavit.

Defendants' related argument, to the effect that plaintiff "waived his claim that there is an enforceable settlement agreement" because he failed "to raise the issue before the verdict" (2779), represents another incorrect reading of the record which shows indisputably that the Court intended to take the verdict unless the parties stipulated to a settlement on the record (2759, 2761, 2813-2816). Indeed, the Court expressly stated, on the record, that it was not going to hold the jury and delay taking a verdict unless both parties agreed to the settlement (2879). In these circumstances, defendants' decision to renege on the settlement that plaintiff accepted could not result in a waiver of the jury verdict based on the procedural posture of the case. Indeed, what was plaintiff's attorney to do? Counsel could not order the Court not to take the verdict where defendants' wrongful conduct prevented the settlement from being placed on the record

Defendants' claim that there was no settlement to enforce, even under plaintiff's version of the events (2781), is contrary to the record. Furthermore, the defense argument that the final offer expired "at the latest, upon the verdict note"

(2783) was predicated upon the contention that Vermont law provides that an offer lapses if not accepted 'within a reasonable time'" (id.). As demonstrated above, plaintiff's acceptance of defendants' final offer was accepted within a reasonable time as a matter of both fact and law.

Defendants' additional reference to A. Smiley's assertion that Mr. Mitchell "advised me that they are not considering any increases to their Final Offer but would be open to further discussion if we learned later in the evening that the jury was hung or at a further impasse" and that he could "reach out to him on his cell phone at any time that the jury continued deliberating into the evening" (2783) was apropos of nothing and certainly did not support their argument that "Mr. Smiley and Dan (Mitchell) were expecting the jury to remain deadlocked or for deliberations to pause and resume the following Wednesday." Indeed, defendants can offer no reason why Mr. Mitchell would not simply have stated that the "Final Offer" that the carrier made was expressly withdrawn at a particular time period. Plaintiff submits that the reason is obvious: the offer was *never* withdrawn and remained open at the time plaintiff accepted it.

Significantly, defendants did not cite to any case which held that a firm settlement offer made by a carrier once jury deliberations began and which was withdrawn some 6 ½ or 7 hours later, before the jury returned the verdict, based upon inquiries made by plaintiff's counsel asking if the final offer could be increased,

could be withdrawn after plaintiff accepted it on the record and in the presence of defense counsel (2783-2786). The reason for this is clear: the case law points in precisely the opposite direction. See, <u>Yaros v. Trustees of the Univ. of Pa.</u>, 1999 PA Super 303 [Sup. Ct. of PA 1999]; <u>Over & Under Piping Contrs., Inc. v. Vt. Gas Sys.</u>, 2019 U.S. Dist. LEXIS 807 [Dist. of VT 2019]; <u>motion for reconsideration denied</u>, 2019 U.S. Dist. LEXIS 242310 [Dist. of VT 2019].[7]

Defendants' thesis that the "Verdict Note" eliminated a condition precedent to acceptance; to wit, "continued jury deliberations" such that it was "extinguished" as a matter of law is plainly contrary to the record (2784) and unsupported by the caselaw. As well, defendants' assertion that plaintiff's argument asks, "the Court to believe that [Mr. Mitchell] wrote a blank check that plaintiff could cash on a whim" (2784) constitutes overwritten rhetoric in the extreme. Mr. Mitchell had only to withdraw the offer, condition it in some way, or state a fact that would show that it was actually withdrawn in the 6 ½ to 7-hour period after it was made spanning the time that the jury got the case and the time it reached its verdict. Mr. Mitchell, though free to do so, never stated – not once – that he "withdrew" or "revoked" the "Final Offer" before plaintiff's counsel accepted same.

---

[7] <u>Over & Under Piping Contractors, Inc.</u> employed a four-part test for determining whether parties intend to be bound in the absence of a writing, citing to this Court's decision in <u>Winston v. Mediafare Entertainment Corp.</u>, 777 F.2d 78, 80 [2d Cir. 1985]. The court noted, also consistent with this Court's precedent, that no single test was determinative.

In this regard, insurance carriers often make offers of settlement that extend throughout trials. It is not uncommon for carrier offers of settlement to last for weeks and days at trial where the offer only terminates when the jury *renders* a verdict. As the trial court stated in Yaros, supra: "We take judicial notice an offer without time or event conditions remains open for a reasonable period under the circumstances, or until it is withdrawn or rejected. *It does not lapse until the trial is terminated by verdict, non-suit, directed verdict.* Closing arguments which do not constitute evidence are not necessarily significant events from which [the University] could infer its offer had been rejected" (*Emphasis added*).

Here, the 6 ½ to 7-hour period during jury deliberations within which the offer was made and never expressly revoked was reasonable as a matter of both fact and law, especially when the Court considers Mr. Mitchell's failure to affirm under oath that he formally withdrew it prior to its acceptance by plaintiff's counsel.

Plaintiff also submits that it is contrary to the record for defendants to posit that plaintiff "rushed to accept the offer that he had spent all day rejecting" (2785). The record, in actuality, shows that plaintiff was "struggling" with whether to accept the Final Offer, and that the Final Offer was never rejected by the plaintiff.

That Mr. Mitchell "left the courthouse" after extending an "open ended offer" was not unusual given the nature of the jury deliberations, the fact that the jury was at an impasse requiring an "Allen charge" and the fact that Mr. Mitchell was a phone

call away (2785). Moreover, defendants' observation that Mr. Mitchell was not in a position to evaluate "subsequent jury notes" misses the mark (2785). Defendants never claimed that Mr. Mitchell was unavailable to *them*. If Mr. Mitchell truly believed that the jury notes were favorable, he could have withdrawn the offer by simply communicating that fact to plaintiff's counsel at any time. Indeed, his affidavit shows a course of conduct that is antithetical to defendant's current thesis that there was never a proper Final Offer for plaintiff to accept.

Mr. Mitchell, in fact, confirmed that his view of the jury notes was that the jury was looking favorably upon the defense such that it was likely that a jury verdict would ensue. Yet, he never stated that he affirmatively withdrew the "Final Offer" that he admittedly made despite this fact. As such, the course of conduct described by Mr. Mitchell in his affidavit supports plaintiff's claim and not that of defendants.

Defendants' related assertion that the "remedy plaintiff seeks would grind settlement to a halt" (2786) is illogical on its face. All that any party has to do to withdraw an offer of settlement is to clearly communicate it to the offeree. Mr. Mitchell never claimed that he did that here, though he was afforded multiple opportunities to do so.

The vacuity of defendants' claims was reinforced and made apparent by plaintiff in reply papers that included a concise memorandum of law (2826-2836) and A. Smiley's supplemental declaration (2837-2841) which contained a useful

timeline of events and exhibits (2842-2844). A. Smiley pointed out that defendants' offer to settle was never withdrawn. In fact, he learned of that claim for the first time when he read defendants' opposition papers (2827-2829). He pointed out that revocation is predicated on an objective not a subjective standard, and he asked what reasonable attorney would believe that a revocation of an offer was communicated by an insurance carrier based upon the assertion that the carrier "wanted to hear from the jury before having further settlement talks" (2830).

Further, A. Smiley noted that the law makes clear that revocation involves a manifestation of intent that is objective, not subjective, in nature. See, Bellasalma v. Colton RV, LLC, 2023 U.S. Dist. LEXIS 124800 [WDNY 2023]; Kirkland v. Sunrise Opportunities, 200 F.R.D. 159, 161 [Dist. of ME 2001]; Goulet v. USAA Ins. Agency, 2020 ME Super. LEXIS 69 [Sup. Ct. of ME, Penobscot County 2020]; Restatement (Second) of Contracts, §43.

Indeed, A. Smiley pointed out that his statement that the final settlement offer had "just been pulled" proved that there was no formal revocation of the offer prior to his acceptance of same on the record (2830-2831). Further, the absence of corroborating declarations from Mr. May, Mr. Aicher, Ms. Posner and other defense lawyers who were present during the negotiations was telling. Defense counsel failed to submit declarations corroborating that the final offer was ever withdrawn or revoked prior to plaintiff's acceptance. Additionally, Mr. Mitchell's non-affirmance

of any communication with his own defense counsel about revoking the final offer supports plaintiff's claim that a valid settlement was effectuated by the parties based on the facts disclosed by the record (2831-2832).

As well, the final settlement offer was accepted by plaintiff within a reasonable time. A. Smiley pointed out that the final offer was made at 2:32 PM while the jury was deliberating, reaffirmed at 6:11 PM by Ms. Posner and then again by Mr. Mitchell at 8:30 PM as the jury continued to deliberate. The offer was accepted at 9:17 PM, within a 6 hour and 45-minute period of time when the final offer was initially made, 3 hours after Ms. Posner reconfirmed the offer and 45 minutes from the second reaffirmance of that offer by Mr. Mitchell (2832-2833). Because these facts were not in dispute, the issue could be treated as one of law and not of fact. See, Williston on Contracts, 4th, §5.9 (2832-2833).

Further, the offer was never rejected (2833) and defendants' judicial estoppel claim was meritless as plaintiff's position was never inconsistent, and there was certainly no evidence on the record that plaintiff intentionally sought to relinquish a known right or privilege (2834). As well, defendants did not approach the issue with clean hands precluding any successful judicial estoppel claim (2835). See, Nordic Windpower USA, Inc. v. Jacksonville Energy Park, LLC, 2012 U.S. Dist. LEXIS 55552 [Dist. of VT 2012].

Defendants submitted a sur-reply memorandum of law in connection with the motion (2849-2858). Initially, the papers were striking for what they did *not* contain: *any* affidavit from *any* defense representative contesting A. Smiley's factual assertions which were based on personal knowledge. Thus, there exists no evidence whatsoever on this record that *any* defense representative ever told plaintiff or plaintiff's representatives that the final settlement offer was "withdrawn" at a specific and fixed point in time.

Defendants posited that the doctrine of equitable estoppel applied to preclude plaintiff from attempting to enforce the settlement. (2851-2853). Defendants attempted to cure the paucity of supporting proof regarding the rejection of the Final Offer by stating, incorrectly, that "the offer was withdrawn by Mr. Mitchell during a one-on-one conversation with Mr. Smiley" (2853). They also claimed, again falsely, that A. Smiley conceded that the final settlement offer was revoked when he stated that the carrier had "pulled" it on the record (2854-2855).

In addition, defendants posited that they were "not responsible for plaintiff's agreement to the jury's verdict being read" (2855), an assertion that refutes itself because plaintiff had no power to prevent the jury from reading its verdict once defendants refused to honor the settlement that was accepted, a fact confirmed by the District Court on the record (2875).

### 6. The District Court's Denial of Plaintiff's Motion to Enforce the Settlement

Plaintiff summarized previously the position of the parties as outlined in the applicable motion papers. As such, plaintiff will not repeat that discussion here.

Turning to the disposition of the motion, the Court held oral argument on May 30, 2024 (2861-2918), after which it entered a formal written order denying plaintiff's motion to enforce the settlement dated June 10, 2024 (2919-2922), an order from which plaintiff appealed (2923).

Prefatorily, the Court noted that because the record was complete such that it was "satisfied with the declarations and the transcript" no testimony need be taken by means of a separate hearing (2861-2863). A. Smiley then addressed plaintiff's position. He pointed out that the Court was correct when it remarked that when an offer was rejected and a counteroffer was made, the original offer was withdrawn under Vermont law. But he pointed out that in this case, plaintiff never made a counteroffer with respect to defendants' final offer and only inquired whether defendants could increase that offer (2862-2867).

Importantly, the District Court judge stated that she would "never suspend a jury trial" to "continue settlement negotiations" (2866), an assertion that demolishes defendant's thesis that plaintiff waived the right to seek enforcement of the settlement by allowing the Court to do the very thing it stated it would not do. When combined with the Court's statement that in the absence of a confirmed settlement

32

that could be placed upon the record the jury verdict would be recorded and taken in open court (2835), the record proof, as well as settled case law, puts the lie to defendants' assertion that plaintiff waived his right to seek to enforce of the settlement simply because a jury verdict was taken.

As to the Court's assertion that there was a "time limit" because "we're in the midst of a jury trial," A. Smiley pointed out that time was "certainly of the essence" but that there was an acceptance of the final settlement offer communicated to defendants' representatives and in open court before there was any revocation of the offer. At bar, no express time limit was set by the parties or implied from their conduct that applied to the subject offer (2866-2870).

With respect to A. Smiley's statement that the defendants' settlement offer was "pulled", that was merely an oral assertion that was made after the offer was accepted. It was also designed to provide the Court with notice that a stipulation of settlement could not be placed on the record, a circumstance that would have allowed the Court to disband the jury which was present and waiting to record a verdict they had reached (2870-2873).

The Court then inquired whether plaintiff's communication of the settlement offer to defense counsel was sufficient because they purported to "not be in the loop" (2873-2877). As plaintiff will show, plaintiff's acceptance of the offer in open court to defense counsel was sufficient, under Vermont law, to qualify as a proper

33

acceptance. A. Smiley further posited that he did not tell the Court that the case was formally settled because the Court was bringing back the jury to render its verdict and a stipulation of settlement could not be placed on the record based on defendants' improper retroactive withdrawal of same (2872-2879).

Further, Mr. Mitchell's declaration made clear that defense counsel, Craig May, relayed the plaintiff's acceptance of the final offer to Mr. Mitchell behind closed doors and it was only after the acceptance that Mr. Mitchell directed Mr. May to "receive the verdict."

A. Smiley also pointed out that given the fluidity of the situation that existed at the time, he had not had at his fingertips case law stating that based on the tri-partite type relationship between defense counsel, the carrier and the defendant, communicating acceptance of defendants' final offer of settlement to defense counsel was appropriate (2877-2880). When asked how long the final offer was pending, A. Smiley responded, "the whole time. It never expired" (2880). Plaintiff's acceptance of the offer prior to the jury rendering its verdict was completely proper and congruent with Vermont law (2880-2882).

A. Smiley went on to point out that there was no definitive declaration by any defense representative stating that the offer was withdrawn before it was accepted and that plaintiff's entreaties as to whether the offer could be increased did not negate the final settlement offer that was on the table (2881-2886). Further, Mr.

Mitchell had the opportunity to submit a responsive declaration stating definitively that he withdrew the offer prior to the time it was accepted but he did not do so leaving defendants with his original statement that he believed that the offer was withdrawn, based solely on his statement that he wanted to see what the jury verdict would be, a claim that is illogical and does not constitute a revocation (2886-2888).

After reiterating his position that his statement on the record that the offer was "pulled" dealt only with the fact that he could not reach Mr. Mitchell and that the settlement was not confirmable on the record (2888-2891), A. Smiley concluded that a proper acceptance of a pending offer was plainly made in this case. Further, A. Smiley was unaware at the moment that defense counsel, Craig May, had also relayed the plaintiff's acceptance of the final offer to Mr. Mitchell behind closed doors, and it was only *after* the acceptance that Mr. Mitchell directed Mr. May to "receive the verdict."

Defense counsel reiterated its position that plaintiff never accepted an outstanding offer and that plaintiff's statements on the record confirmed that fact (2891-2899). Positing that a jury verdict "is not taken for sport", defendants reiterated their judicial estoppel argument (2899-2905). Curiously, defendants claimed that Mr. Mitchell's decision to leave the courthouse, an act over which plaintiff had no control, somehow negated plaintiff's claim that an outstanding offer to settle was accepted (2903-2905).

35

Thereafter, defense counsel stated that even though he believed the issue was one of law if the Court was inclined to grant plaintiff's motion an evidentiary hearing would be appropriate (2905-2906).

In reply, plaintiff's counsel pointed out that settlement decisions are made by the client and once the plaintiff here accepted the final offer of settlement, same was communicated to defense counsel and the Court (2906-2907). He also reiterated his position that the Court would not, under any circumstances, dismiss the jury without having a binding stipulation of settlement that was consented to by the parties so that the taking of the jury verdict could not constitute a waiver of plaintiff's acceptance of the defendants' final settlement offer which took place before the verdict was read (2908-2911).

Importantly, the District Court specifically noted, on the record, that there was a "disputed issue of fact about whether the final offer was withdrawn prior to acceptance" based on a "declaration that supports that it was" and a "declaration that indicates it wasn't" (2914). While plaintiff submits that this assertion is incorrect, assuming that this Court finds that it represents a correct statement of the record, a hearing is necessary to resolve that factual dispute.

The District Court held, that notwithstanding the outstanding question of fact that it found present on the record with respect to whether a proper settlement was effectuated by the parties, that plaintiff's claim was precluded by the doctrine of

judicial estoppel (2915-2917). The Court stated that the doctrine applied based on counsel's concession that the settlement was "pulled" and plaintiff's subsequent taking of a verdict (2916-2918). It also stated that there was no "indication of what the terms of the settlement was, what the amount, what it would be paid overtime, would it be placed in an annuity ..." (2917). This conclusion was plainly wrong as the terms of the settlement were never contested by the parties and the confidentiality requirements of the settlement prevented some of them from being stated on the record. The terms laid out in defendant's first settlement offer were part of the settlement and the Final Offer which contained definitive terms as to payment was accepted prior to the jury's rendering of the verdict (2917).

In a subsequent written order, the trial court confirmed its finding that judicial estoppel prevented plaintiff from seeking enforcement of the settlement (2919-2922). Plaintiff timely appealed from that order (2923).

## QUESTIONS PRESENTED FOR REVIEW

1. Where a final offer of settlement is made when the jury begins its deliberations, and that settlement offer is confirmed two additional times prior to it being accepted by the plaintiff, does a plaintiff's acceptance of that offer communicated to defendants' attorneys create a binding settlement agreement even if the settlement was not placed on the record because the defendants insurance

adjuster "pulled" the offer after it was accepted and before the jury rendered its verdict?

Plaintiff submits that the answer to this question is "Yes."

2. Does the doctrine of judicial estoppel apply where plaintiff accepts an outstanding settlement offer before it is withdrawn merely because the plaintiff informed the trial court that the offer was "pulled" such that it could not be placed upon the record where the Court, by its own admission, would not disband the jury and take the verdict in the absence of consent by both parties to the settlement?

Plaintiff submits that the answer to this question should be "No."

3. Where the only evidence of an alleged revocation of an existing settlement offer is the statement of an insurance adjuster that he "wanted to hear from the jury before having any further settlement talks," does such evidence constitute a clear and unambiguous revocation of the offer under existing contract law?

Plaintiff submits that the answer to this question should be "No."

4. Where a court finds that the issue of whether a binding settlement was effectuated between the parties is an issue of fact, should a hearing be ordered despite the parties' position below that the record was clear enough to resolve that factual discrepancy without a hearing where an appellate court agrees with the trial court's determination regarding that issue?

38

Plaintiff submits that the answer to this question should be "Yes."

## DISCUSSION

## POINT I

**UNDER VERMONT LAW SPECIFICALLY, AND AMERICAN CASE LAW GENERALLY, PLAINTIFF VALIDLY ACCEPTED A PENDING "FINAL SETTLEMENT OFFER" WHICH WAS NEVER WITHDRAWN AND PLAINTIFF'S STATEMENT THAT THE OFFER WAS "PULLED" AFTER THE JURY HAD REACHED A VERDICT DID NOT INVOKE THE DOCTRINE OF JUDICIAL ESTOPPEL BECAUSE THE STATEMENT WAS NOTHING MORE THAN A FACTUAL STATEMENT REFLECTING THE CIRCUMSTANCES THAT EXISTED AT THE TIME AND NOT A BINDING ADMISSION OF LAW**

**A.     Regarding the Applicable Law**

Under Vermont law, settlement agreements are governed by general contract principles. See, Rogers v. Rogers, 135 Vt. 111, 112, 373 A2d 977 [Sup. Ct. of VT 1977]. Courts look to contract law to determine whether an offer has been accepted (Rule v. Tobin, 168 Vt. 166, 171, [Sup. Ct. of VT 1998]). "Although the law favors settlement agreements, it is a basic tenet of contract law that for a contract to be effective as a legal document, 'there must be mutual manifestations of assent'" or a 'meeting of the minds on all essential particulars' at the point of the agreement. See, Chester v. Weingarten, 2013 Vt. Unpub. LEXIS 211 [Sup. Ct. of VT 2013]. See generally, Evarts v. Forte, 376 A2d 766 [Sup. Ct. of VT 1977].

"While a binding agreement need not contain each and every contractual term, it must contain all of the essential terms" (Quenneville v. Buttolph, 175 Vt. 444 [Sup.

Ct. of VT 2003]). Relatedly an "enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such by the other" (Starr Farm Beach Campowners Ass'n v. Boylan, 175 Vt. 503, 505 [Sup. Ct. of VT 2002]).

Substantively, under basic contract law, an acceptance of an offer must be unconditional and "substantially comply with the terms of the offer" because "an acceptance that modifies or includes new terms is not an acceptance of the original offer; it is counteroffer" (Rule, supra); Benya v. Stevens & Thompson Paper Co., 143 Vt. 521 [Sup. Ct. of VT 1983]; Hill v. Bell, 111 Vt. 131, 11 A2d 211 [Sup. Ct. of VT 1940]; Purrington v. Grimm, 83 Vt. 466 [Sup. Ct. of VT 1910].

An important issue in this case relates to the timing of an acceptance of an outstanding offer to settle. Addressing this issue, the Vermont Supreme Court, in Vaughan, supra held that "the time for measuring a 'meeting of the minds' is the point of agreement, not performance."

Relatedly, oral agreements to settle are generally enforceable (Winston, supra; Over & Under Piping Contractors, Inc., supra). In this regard, a settlement "remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." See, Powell v. Omnicom, 497 F.3d 124, 129 [2d Cir. 2007].

In Over & Under Piping Contractors, Inc., supra, the Court, citing to this Court's decision in Winston, held that in deciding whether the parties intended to be bound in the absence of a writing, the Court has to consider: 1) whether there has been an express reservation of the right not to be bound in the absence of a writing; 2) whether there has been partial performance of the contract; 3) whether all of the terms of the alleged contract had been agreed upon; and 4) whether the agreement at issue is the type of contract that is usually committed to writing.

In that case, the parties came to a verbal settlement agreement after which counsel for the plaintiff forwarded a proposed written general release to the defendants. The defendants did not respond causing plaintiff's counsel to email defense counsel suggesting that counsel advise the court of the settlement. Counsel responded that he was not authorized to do so since the parties were working out differences relating to the release. Subsequently, plaintiff filed a motion to enforce the settlement which the District Court granted holding that the parties had an enforceable settlement agreement on the terms.

It is well settled that in order to affect a revocation of an existing offer, the offeror's actions must be clear and unambiguous. See, Restatement (Second) of Contracts, §36(1); Over & Under Piping Contractors, Inc. Vt. Gas Sys., supra; Roy v. Town of Tinmouth, 2008 Vt. Super. LEXIS 29 [2008]. As well, in the context of cases involving a revocation of an existing offer, the law of contracts insists upon an

objective, rather than a subjective, determination of whether mutual assent exists. As such, it is necessary for the offeror to communicate the revocation of an offer to the offeree in clear and unambiguous terms. See, <u>Angel v. Tauch</u>, 642 S.W.3d 481 [Tex. 2002]; <u>Felberbaum v. Sequium Asset Solutions, LLC</u>, 2023 U.S. Dist. LEXIS 5619 [SDNY 2023]; <u>Altman v. Zwicker & Assoc., P.C.</u>, 2021 U.S. Dist. LEXIS 160958 [SDNY 2021]. Internal intentions of the parties are not relevant because the law looks to the manifestation of intent that the parties convey to one another. See, <u>Bellasalma v. Colton RV, LLC</u>, 2023 U.S. Dist. LEXIS 124800 [WDNY 2023]; <u>Kirkland v. Sunrise Opportunities</u>, 200 F.R.D. 159, 161 [D. Me. 2001]; <u>Goulet v. USAA Ins. Agency</u>, 2020 Me. Super. LEXIS 69 [2020]; Restatement (Second) of Contracts §43. As previously stated, <u>supra</u>, Mr. Mitchell's statement that he "wanted to hear from the jury before having any further settlement talks" <u>is in no way a clear and unambiguous revocation of an offer under the law.</u>

At bar, the record establishes indisputably that defendants made an initial settlement offer on February 9, 2024, and that plaintiff responded with a counteroffer on February 12, 2024. On February 16, 2024, at approximately 2:30 PM, defendants increased their monetary offer pursuant to what the parties referred to below as the "Final Offer." The record shows that there were no additional terms added to the final settlement offer, and that the only thing that changed was the amount of the settlement which was confidential. This led plaintiff (and apparently defendants) to

believe that the issue of whether there was an enforceable settlement contract presented a pure question of law that the District Court could review de novo (Miller v. Flegenheimer, 203 Vt. 620, [Sup. Ct. of VT 2016]). Plaintiff submits that because he accepted an outstanding settlement offer fully without changing any material terms (see, Sweet v. St. Pierre, 209 Vt. 1 [Sup. Ct. of VT 2018]; Wark v. Zucker, 214 Vt. 605 [Sup. Ct. of VT 2021]), "buyer's remorse" was not an available ground to vitiate the settlement absent a formal withdrawal of the offer which did not occur here (Uckele, supra).

Plaintiff notes that defendants never expressed any intent not to be bound by the acceptance of the offer, the material terms of the settlement were agreed upon, and the terms of the settlement were not complex such that the settlement could be completed by the service of a general release.

Regarding the issue of how long an offer remains open, the general rule in Vermont and the country generally is that such question is ordinarily one of fact (New Eng. Fire Ins. Co. v. Haynes, 71 Vt. 306 [Sup. Ct. of VT 1899]; Brainard v. Van Dyke, 71 Vt. 359 [Sup. Ct. of VT 1899]). However, where the facts are not in substantial dispute, like here, the question can present an issue of law that an appellate body can review de novo. See, Miller, supra. It is certainly true that an offer will not remain open indefinitely, but a reasonable time period can be imputed to its acceptance. See, Ellis Admr. v. Durkee, 79 Vt. 341 [Sup. Ct. of VT 1906].

Here, as plaintiff has shown, plaintiff accepted an offer that was definite and did not change any of the outstanding terms (Okemo Mountain v. Okemo Trailside Condominiums, 139 Vt. 433, 431 A2d 457, 459 [1981]). Plaintiff notes that an offeror's acceptance of an offeree's counteroffer may be accomplished either expressly or by conduct (Benya, supra). As the Vermont Supreme Court noted in Okemo Mountain, an acceptance must occur "within a reasonable time, for after such a time the offer would lapse, and any acceptance would be impossible. An offer remains open where the offeror treats it as being pending" (R.E. Crummer & Co. v. Nuveen, 147 F.2d 3 [7th Cir. 1945]). Since an offer continues for what is considered a reasonable time (SKI, Ltd. v. Mountainside Props., 198 Vt. 384 [Sup. Ct. of VT 2015]), the 6 ½ to 7-hour period that it remained opened here was reasonable as a matter of law under the case law, as plaintiff will show.

Based upon defendants' assertions below, the issue of how plaintiff accepted the offer needs to be discussed here. Under Vermont law, defense attorneys are agents of the insurance company that retains them based upon the "tri-partite type relationship" that exists between the insurer, the insured and defense counsel. See, Stinson v. Union Mut. Fire Ins. Co., 2003 Vt. Super. LEXIS 33 [Sup. Ct. of VT, Orange Unit, Civ. Div. 2019]. See generally, Vermont Agency of Natural Resources v. Towns, 168 Vt. 449 [Sup. Ct. of VT 1998]; Unleaded Software, Inc. v. TNF Gear, Inc., 202 Vt. 656 [Sup. Ct. of VT 2016].

Unsurprisingly, notice to an agent is notice to the principal and an agent is presumed to communicate pertinent facts to the principal (Vermont Agency of Natural Resources, supra; Unleaded Software, Inc., supra). As stated in Stinson, Vermont courts have recognized that defense counsel serves as an agent for the insurer with respect to aspects of the claim at issue. Indeed, courts have ruled that there is an attorney/client relationship between defense counsel and the insurer, though the rule is not uniform. See, Fleurrey v. Vt. Dep't of Aging & Indep. Living, 2023 Vt. Super. LEXIS 100 [Sup. Ct. of VT, Lamoille Unit, Civ. Div. 2023]. See generally, Nev. Yellow Cab Corp. Eighth Judicial Dist. Court of Nev., 152 P3d 737 [Nev. 2007]; Spratley v. State Farm Mut. Auto Ins. Co., 2003 UT. 39 [Sup. Ct. of UT 2003]; State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co., 72 Cal. App. 4th 1422 [COA of CA 5th Dist. 1999]. As well, attorneys can bind their clients by making a settlement offer that is timely accepted even in the face of a claim of lack of authority in appropriate circumstances. See, Price v. Bowen, 183 Vt. 572 [Sup. Ct. of VT 2008].

In this regard, defendants' insurance representatives possess the legal authority to bind the defendants to the settlement offers they make (Farley v. Security Ins. Co., 331 Ill. App. 448 [App. Ct. of Ill 1st Dist. 1947]). Indeed, insurance adjusters and claims managers "have the authority not only to negotiate an agreement, but also to bind the insured to the dollar figure established by that

agreement" (id.). See generally, New Dance Group Studio v. St. Paul Fire & Marine Ins. Co., 1995 U.S. Dist. LEXIS 10205 [SDNY 1995].

At bar, the agency issue is of diminished significance since the parties concede that the outstanding settlement offer was made by representatives of the carrier. As such, plaintiff submits that A. Smiley's acceptance of the offer to defense counsel in open court, was sufficient, as a matter of both fact and law, to constitute a proper acceptance of a pending and outstanding offer as a matter of law.

**B.** **Analogous Case Law Supports Plaintiff's Claim that he Accepted a Valid Settlement Offer Prior to the Time the Jury Formally Rendered its Verdict**

Yaros, supra, is perhaps the lead case dealing with the issue presented at bar. There, at the conclusion of the testimony at trial, the defendant University offered Dr. Yaros $750,000 during a 10-minute recess prior to closing arguments. When the discussion ended, the University's attorney told Dr. Yaros' attorney, "you've got to get back to me." According to the court, when he said this, defense counsel "looked at the clock and placed his palm sideward." There was nothing stated about how long the offer would remain open.

Dr. Yaros' attorney then remarked that "he would talk to his client now," after which he left the courtroom in search of Dr. Yaros who previously exited the courtroom to go to the bathroom. Dr. Yaros' counsel subsequently came back into the courtroom first and asked the court for 2 minutes to speak with his client before

closings, a request to which the court assented. Subsequently, Dr. Yaros returned to the courtroom, but for reasons not clear from the opinion, her attorney did not speak with her at the time and closing arguments commenced immediately.

During the University's closing argument, Dr. Yaros authorized her attorney to accept the outstanding offer to settle. Notwithstanding this fact, Dr. Yaros' attorney gave his rebuttal. After closing arguments, at a sidebar conference, Dr. Yaros' counsel stated that the latter accepted the University settlement offer to which the University's attorney replied: "I don't know if it's still there judge." This, of course, is eerily similar to the fact presented in this case.

The trial judge subsequently charged the jury, after which it came back with a defense verdict. After a hearing, the trial court granted Dr. Yaros' motion to enforce the settlement. The appellate court affirmed and reiterated the presumption that an oral offer typically terminates at the end of the conversation. But because the University's attorney manifested an intent to extend the offer beyond the conversation when he told Dr. Yaros' counsel to "get back to me", he did not spell out when the offer would terminate. As such, the "University was not justified in inferring that proceeding to closing arguments would constitute a rejection of the settlement offer." The court went on to conclude that the University settlement offer was accepted within a reasonable time.

As stated previously, the facts in Yaros are strikingly similar to the facts in the case at bar. Not only does Yaros support plaintiff's assertion that he accepted a valid settlement before the jury returned a verdict while the offer was open, but it comports with other case law holding that in similar situations a party's acceptance of a pending settlement offer is valid and binding on the parties. See, Coffman Industries, Inc. v. Gorman-Taber Co., 521 S.W.2d 763 [COA of MO. Kansas City Dist. 1975] [A surety company promised a subcontractor it would pay the latter's claim if the subcontractor settled with another party. A letter written 11 months later continued the offer. A 2-and-a-half-year period for settlement of the claim was held not to be unreasonable]; C.E. Tackels, Inc. v. Fantin, 341 Mich. 119 [Sup. Ct. of MI 1954] [Two weeks after the prime contract was awarded to the plaintiff, the president of plaintiff tried to reach defendant to notify him that the offer had been accepted. Three weeks later, plaintiff notified the defendant about the latter's successful bid, a delay brought about by plaintiff's inability to contact defendant directly. Defendant, when contacted, expressed its reluctance to proceed because he thought the bid was too low. Defendant's reluctance had nothing to do with delay. The court held that the defense of untimeliness was invalid inasmuch as defendant could not "mend his hold" after suit was brought].

Wal-Mart Stores Tex. LLC v. Shirey, 2020 Tex. App. LEXIS 945 [COA of TX 14th Dist. Houston 2020], provides a fascinating illustration of revocation

48

concepts generally. There, Wal-Mart filed a motion for summary judgment in a slip and fall case. Before the motion was decided, on March 29, 2017, Wal-Mart's attorney made an offer via email to plaintiff's counsel to settle the case by paying plaintiff, and it gave the plaintiff until 3:00 PM on Friday, March 31, 2017, to accept the offer. The email stated that although "the motion for summary judgment is still pending, … Wal-Mart has instructed us to take this case to trial if it is denied."

The next morning, March 30, 2017, the court, considering Wal-Mart's summary judgment motion, provided notice to the parties that the motion had been granted. Less than one hour later, the plaintiff's counsel advised Wal-Mart's counsel that plaintiff formally accepted Wal-Mart's settlement offer, but Wal-Mart refused to proceed with the settlement based upon the court's granting of its motion for summary judgment.

This led plaintiff to file an action to enforce the settlement. In that action, the court rejected Wal-Mart's argument that the granting of summary judgment implicitly withdrew Wal-Mart's settlement offer, noting that Wal-Mart's email offering settlement "explicitly stated what would happen if summary judgment was denied, but never mentioned that the offer would be revoked if the federal court granted Wal-Mart's motion for summary judgment."

Here, where Mr. Mitchell never – not once – affirmatively stated that he or any other defense representative withdrew the final offer of settlement, plaintiff's case is far stronger.

It is certainly true that courts have refused to enforce settlements where a jury or finder of fact has rendered an adjudication on the merits after which the claimant attempts to accept a settlement offer that was allegedly pending. See, Sherrod v. Kidd, 155 P3d 976 [COA of Wash. Div. 3 2007]; Jennings v. Hatfield, 2005 Tex. App. LEXIS 8730 [COA of TX 14th Dist. Houston 2015], pet. for rev. den., 2006 Tex. LEXIS 239 [Sup. Ct. of TX 2006]. But, of course, here, plaintiff accepted the final offer of settlement *prior* to the time the jury rendered its verdict. This fact can be used to harmonize the holdings in Sherrod, Jennings and Yaros. At the time plaintiff accepted defendants' final settlement offer, no party knew or could be sure of how the jury would rule. As such, enforcement of the settlement was plainly proper as a matter of law.

Based on the facts disclosed by this record, plaintiff accepted a valid and extant settlement offer properly such that it should be enforced according to its terms. See, Harris v. Roberts, 2007 Phila. Ct. Com. Pl. LEXIS 325 [Com. Pleas Ct. of Phila. Cty, Penn. Civ. Tr. Div. 2007].

Plaintiff notes that in Moore v. Donegal Mut. Ins. Co., 247 MD. App. 682 [Ct. of Spec. App. of MD 2020], the Maryland Court of Special Appeals wrote: "Here,

where the offer was accepted prior to final judgment, within approximately 2 hours after the offer was stated to be on the table, the issue whether the offer was accepted within a reasonable time is an issue of fact. Accordingly, the Circuit Court erred in granting Donegal's motion for summary judgment based upon its finding, as a matter of law, that the offer lapsed." Plaintiff submits that here, based on Mr. Mitchell's lone affirmed declaration, which was apropos of nothing legally, there is no issue of fact for this Court to decide. Plaintiff accepted a pending settlement offer within a reasonable time such that his motion to specifically enforce the settlement should have been granted on the papers.

However, Moore clearly holds that changes in the posture of litigation do not preclude an offer of settlement from lapsing. Indeed, in Perrino v. Bimasco, Inc., 234 AD2d 281 [2d Dept. 1996], the court refused to set aside a stipulation of settlement in a case where plaintiff accepted an outstanding settlement offer after the case had been dismissed by the Appellate Division where the appellant was unaware of the Appellate Division decision and believed that the appeal was still pending.

51

**POINT II**

**PLAINTIFF WAS NOT JUDICIALLY ESTOPPED FROM ACCEPTING DEFENDANTS' "FINAL SETTLEMENT OFFER" AS PLAINTIFF'S CONDUCT WAS NOT INCONSISTENT IN ANY WAY AND HIS ASSERTION THAT THE DEFENDANTS' SETTLEMENT OFFER HAD BEEN "PULLED" REPRESENTED A FACTUAL STATEMENT THAT WAS MADE AT A TIME AFTER THE SETTLEMENT WAS ACCEPTED**

The District Court's finding that judicial estoppel applies to this case preventing plaintiff from accepting the settlement was incorrect both factually and legally. Factually, plaintiff's statement that defendants' final settlement offer had been "pulled" represented a factually correct statement regarding what was transpiring at the time. It was not a judicial admission that the offer had been withdrawn, a claim that Mr. Mitchell never expressly made. And it occurred subsequent to plaintiff's acceptance of the settlement as reflected by the record. Plaintiff's position was consistently that he accepted the settlement but that he could not confirm same on the record, an act that would have negated the need for the jury to render a verdict at the time that the parties went back on the record after 9 p.m. on February 16, 2024.

Yaros and its progeny clearly establish that a party can accept a settlement notwithstanding the jury or finder of fact rendering a verdict. Moreover, as we established previously, the District Court itself made clear that there was no way in which it would not take the jury verdict if the parties could not confirm the settlement on the record (2875). As such, plaintiff and plaintiff's counsel had no way to prevent

the jury from rendering its verdict. Plaintiff cannot be faulted for the jury's rendering a verdict that the trial court stated would be taken if the parties could not agree to an on-the-record settlement, an act that would have allowed the trial court to disband the jury.

It has been held that Vermont has not affirmatively adopted the doctrine of judicial estoppel (In re Chittenden Solid Waste Distribution, 2007 Vt. 28 [Sup. Ct. of VT 2007]; Gallipo v. City of Rutland, 173 Vt. 223 [Sup. Ct. of VT 2001]). To the extent it is applicable, the doctrine is based on an inconsistency between the current position of a party and a prior position of that party. For the doctrine to apply, it is necessary for the party asserting it to prove that the prior position was "adopted by the Court in some manner" (id.; Avery v. Estate of Avery, 207 Vt. 570 [Sup. Ct. of VT 2018]).

As well, it has been held that a party seeking to benefit from the doctrine must "demonstrate that it relied on the alleged (statement) to its detriment." See, Knaresborough Enters., LTD. v. Dizazzo, 214 Vt. 32 [Sup. Ct. of VT 2021].

Here, there is clearly no evidence that the Court assumed any position with respect to this issue, nor is there any proof that defendants relied to their detriment on plaintiff's actions. But, more to the point, plaintiff's conduct was not, as shown by the case law, wrongful in any respect. There was nothing "inconsistent" about plaintiffs accepting an offer that was on the table while, subsequently, informing the

Court that the offer had been "pulled" when the Court was inquiring whether a settlement had been reached so that the Court could disband the jury and not take the verdict. Indeed, if this Court finds, as plaintiff submits it should, that there was a valid settlement offer extant when plaintiff's counsel accepted same, the judicial estoppel argument, to the extent it is applicable in Vermont, would fail of its own weight because, in that circumstance, plaintiff would not have engaged in any act that was wrongful or internally inconsistent.

It is respectfully submitted, that the District Court erred in finding as a matter of law that Judicial Estoppel applied to the undisputed facts in this record.

### POINT III

**IN THE EVENT THIS COURT FINDS THAT THERE IS AN ISSUE OF FACT REGARDING WHETHER A VALID OFFER WAS ACCEPTED BY THE PLAINTIFF, A REMAND TO THE DISTRICT COURT TO TAKE EVIDENCE AT A HEARING IS APPROPRIATE**

Plaintiff concedes that he did not request a hearing below believing that the issue of whether defendant's offer remained open at the time plaintiff accepted same presented a question of law for the Court to decide based upon the undisputed state of the record. As the District Court recognized, it was willing to conduct a hearing but it, too, agreed that the record was satisfactory such that taking evidence separately at a hearing was unnecessary.

However, the District Court went on to find that there was an issue of fact concerning whether there was a valid settlement; it denied plaintiff's motion

notwithstanding that ruling based on its finding that plaintiff was judicially estopped from making that claim, even though the doctrine, plaintiff submits, is inapplicable as a matter of both fact and law, based on the state of this record. In these circumstances, however, if this Court agrees with the District Court's finding that an issue of fact is present as to whether plaintiff properly accepted a pending final settlement offer, a conclusion that would necessarily constitute a rejection of plaintiff's claim that he accepted such an offer properly as a matter of law, a hearing is necessary to resolve that issue. See generally, <u>Viola v. Krouse</u>, 2013 PA Super. Unpub. LEXIS 3855 [Sup. Ct., Pen., 2013].

Plaintiff notes that defendants themselves requested this relief in their opposition papers to the extent the District Court disagreed with their primary arguments. And plaintiff's decision not to request such a hearing was predicated on his belief that the issue could be decided as a matter of law based on the undisputed facts on this record.

In this regard, plaintiff, of course, recognizes that this Court might not accept his position on that issue given that he is an appealing party. As such, in the event this Court finds that the issue of the propriety of the settlement cannot be determined

55

on the papers alone, a hearing is appropriate based on the District Court's finding and defendants' stated position below.[8]

---

[8] Plaintiff anticipates that defendants will claim that it is somehow unfair for plaintiff to argue that he accepted a settlement offer where a jury verdict was taken because, in that circumstance, the plaintiff would "get the best of both worlds." If the jury verdict was less than the amount of the settlement, plaintiff could claim that the settlement was valid. But, if the jury verdict exceeded the amount of the proposed settlement, plaintiff could claim the benefits of the verdict. This claim, however, is inconsistent logically and legally. In the event this Court determines that plaintiff accepted a valid offer, then defendants' conduct would be wrongful. In that event, while defendants might be subject to a juridical estoppel claim based on their refusal to honor the settlement, such result is not unfair because it was created wholly by the wrongful conduct of defendants and their representatives. Indeed, <u>Yaros</u> and its progeny establish that the taking of a verdict does not prevent a reviewing court from enforcing a settlement that was agreed to before the verdict was handed down. And plaintiff repeats his earlier position that neither plaintiff nor his counsel had any ability to prevent the District Court at bar from taking a jury verdict in the circumstances disclosed by this record.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that the District Court's order be reversed, and that plaintiff's motion to enforce the settlement agreement be granted and that the Court issue any other, further, or different relief it deems just, proper and equitable.

Respectfully submitted,

By: _____

Brian J. Isaac, Esq.
POLLACK POLLACK ISAAC & DECICCO, LLP
250 Broadway, Suite 600
New York, New York 10007
212-233-8100
bji@ppid.com

Special and Appellate Counsel to

SMILEY & SMILEY, LLP
Attorneys for Plaintiff-Appellant-Cross-Appellee
28 Liberty Street, 6th Floor
New York, New York 10005
212-986-2022
asmiley@smileylaw.com

Andrew J. Smiley, Esq.
Brian J. Isaac, Esq.
Of counsel.

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,632 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated:   New York, New York
             September 19, 2024

                        Respectfully submitted,

            By:   _____
                        Brian J. Isaac, Esq.
                        POLLACK POLLACK ISAAC & DECICCO, LLP
                        250 Broadway, Suite 600
                        New York, New York 10007
                        212-233-8100
                        bji@ppid.com

                        Special and Appellate Counsel to

                        SMILEY & SMILEY, LLP
                        Attorneys for Plaintiff-Appellant-Cross-Appellee
                        28 Liberty Street, 6th Floor
                        New York, New York 10005
                        212-986-2022
                        asmiley@smileylaw.com

**SPECIAL APPENDIX**

## **<u>Table of Contents</u>**

<u>**Page**</u>

Judgment of the United States District Court for the District
of Vermont, entered February 23, 2024 ...................................... SPA1

Order of the Honorable Christina Reiss Denying Plaintiff's
Motion to Enforce Settlement, dated June 10, 2024 ................... SPA3

**SPA1**

# UNITED STATES DISTRICT COURT
for the
District of Vermont

| | | |
|---|---|---|
| RICHARD GRAJEDA | ) | |
| *Plaintiff(s)* | ) | |
| | ) | |
| v. | ) | Civil Action No.   2:20-cv-165 |
| | ) | |
| VAIL RESORTS INC., VAIL RESORTS | ) | |
| MANAGEMENT COMPANY, AND OKEMO LIMITED | ) | |
| LIABILITY COMPANY d/b/a Okemo Mountain Resort | ) | |
| | ) | |
| *Defendant(s)* | | |

## JUDGMENT IN A CIVIL ACTION

☑  **Jury Verdict.**

☐  **Decision by Court.**

**IT IS ORDERED AND ADJUDGED** that pursuant to the Verdict of the Jury (Document 194), plaintiff's injury was not the result of an "obvious and necessary" danger inherent in the sport of skiing, as defined by the Vermont Sports Injury Statute and plaintiff did not prove by preponderance of the evidence each essential element of his negligence claim against defendants. JUDGMENT is hereby entered for defendants Vail Resorts Inc., Vail Resorts Management Company and Okemo Limited Liability Company, against plaintiff Richard Grajeda.

Date:   February 16, 2024

JUDGMENT ENTERED ON DOCKET
DATE ENTERED:   2/23/2024

*JEFFREY S. EATON*
*CLERK OF COURT*

*/s/ Lisa Wright*
Signature of Clerk or Deputy Clerk

# SPA2

☒ P.O. BOX 945
BURLINGTON 05402-0945
(802) 951-6301

### UNITED STATES DISTRICT COURT

**OFFICE OF THE CLERK**

DISTRICT OF VERMONT

**JEFFREY S. EATON**
CLERK

FEDERAL BUILDING
**BURLINGTON, VERMONT 05402-0945**

☐ P.O. BOX 607
RUTLAND 05702-0607
(802) 773-0245

Civil Action: 2:20-cv-165                           Date:  February 16, 2024

Grajeda v. Vail Resorts Inc et al

NOTICE TO LITIGANTS

If you wish to appeal the enclosed judgment or order, you must file a Notice of Appeal within 30 days after entry of the judgment or order appealed from (or 60 days if the United States or an officer or agency of the United States is a party).  Fed. R. App. P. 4(a)(1).  The fee for filing an appeal is $605.00.

If you wish to appeal but are unable to file your Notice of Appeal within 30 days [or 60 days if applicable] after the date of entry shown on line 2 below, then you have an additional 30 days to file a Motion for Extension of Time.  The Motion for Extension of Time **must** be filed within 30 days after the date on line 3 below.  Every Motion for Extension of Time must contain an explanation which demonstrates "good cause" or "excusable neglect" for failure to file the Notice of Appeal within the time limit required. Fed. R. App. P. 4(a)(5).

**PLEASE TAKE NOTICE**

1. Judgment filed                              February 16, 2024

2. Date of Entry of Judgment on
   the docket of this court                    February 23, 2024

3. Notice of Appeal **MUST** be
   filed on or before                          March 25, 2024

*/s/ Lisa Wright*
Signature of Clerk or Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 JUN 10  PM 4: 29

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| RICHARD GRAJEDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00165 |
| | ) | |
| VAIL RESORTS INC., VAIL RESORTS | ) | |
| MANAGEMENT COMPANY, and OKEMO | ) | |
| LIMITED LIABILITY COMPANY d/b/a/ | ) | |
| OKEMO MOUNTAIN RESORT, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ORDER DENYING PLAINTIFF'S
## MOTION TO ENFORCE THE SETTLEMENT
(Doc. 190)

This matter comes before the court on a motion to enforcement the settlement after a February 1-16, 2024 jury trial. On February 16, 2024, the jury returned a verdict for Defendants, and the court thereafter entered judgment. On February 19, 2024, Plaintiff filed a motion to enforce an alleged settlement, (Doc. 190), to which Defendants responded on March 4, 2024. (Doc. 201.) Plaintiff replied on March 12, 2024, (Doc. 205), and on April 24, 2024, Defendants filed a sur-reply with the court's permission. (Doc. 225.) In a hearing on May 30, 2024, the court denied the motion on the record. (Doc. 230.)

Plaintiff is represented by Andrew J. Smiley, Esq., Guy I. Smiley, Esq., Matthew D. Anderson, Esq., Michael S. Solomon, Esq., and Rosa M. Feeney, Esq. Defendants are represented by Craig R. May, Esq., Emily P. Linehan, Esq., Habib Nasrullah, Esq., Joel P. Iannuzzi, Esq., Thomas P. Aicher, Esq., and Michael J. Curtis, Esq.

## I.    Factual Background.

After the jury began deliberations at approximately 2:30 p.m. on February 16, 2024, Plaintiff's counsel allegedly received a final settlement offer from Defendants'

insurance carrier representatives, Daniel Mitchell and Joy Posner. Mr. Mitchell left the courthouse around 8:30 p.m., and it is disputed whether the final settlement offer was withdrawn before he did so. At approximately 9:15 p.m., the court advised the parties that there was a verdict and it was about to call back the jury. Mr. A. Smiley and the court held the following exchange after a short recess:

> Mr. A. Smiley: [T]here was an offer that our client wants to accept before the verdict, and he just told us that he wants to accept it and wants me to call the claims adjuster and take that offer.
>
> The Court: Okay.
>
> Mr. A. Smiley: And that's what I'm stepping out to do, your Honor.
>
> The Court: All right.
>
> Mr. A. Smiley: I apologize.
>
> The Court: Then we are not going to hear the verdict, and -- and you agree with this, Mr. Aicher?
>
> Mr. Aicher: Your Honor, I'm not in the loop.
>
> The Court: Who's in the loop? So I need to know, offer and acceptance right now before we call off the verdict. Who made --
>
> Mr. Aicher: None of us have any authority that I'm aware of[.]
>
> Mr. A. Smiley: I have his phone number. The claims person just left the building, and he said to call him.

(Doc. 195 at 192-93.)

Mr. A. Smiley allegedly called but could not reach the insurance representative. Mr. May spoke to the representative, who allegedly instructed him to accept the verdict. When Mr. A. Smiley reentered the courtroom, the court inquired:

> The Court: Do we have a settlement?
>
> Mr. A. Smiley: Apparently it was just pulled, so --
>
> The Court: It was just pulled?
>
> Mr. A. Smiley: Yeah.
>
> The Court: Before you had an opportunity to accept it?
>
> Mr. A. Smiley: Yes, your Honor.
>
> The Court: Okay. All right. We will bring back the jurors.

*Id.* at 194-95. The jury rendered a defense verdict.

2

## II.   Conclusions of Law and Analysis.

In Vermont, the existence of a settlement is governed by contract law. *See, e.g.*, *Rogers v. Rogers*, 373 A.2d 507, 509 (Vt. 1977) (analyzing a separation agreement under contract law). "An enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other." *Starr Farm Beach Campowners Ass'n, Inc. v. Boylan*, 811 A.2d 155, 158 (Vt. 2002). "For an acceptance of an offer to be valid, it must substantially comply with the terms of the offer" and "may be accomplished either expressly or by conduct." *Benya v. Stevens & Thompson Paper Co.*, 468 A.2d 929, 931 (Vt. 1983). A contract's existence "depends on facts as well as the reasonable inferences to be drawn from them, and is also influenced by the situation of the parties and the subject matter." *Town of Rutland v. City of Rutland*, 743 A.2d 585, 588 (Vt. 1999). To discern intent, courts look to "the objective words and deeds of the parties." *Quenneville v. Buttolph*, 833 A.2d 1263, 1270 (Vt. 2003).

Instead of stating that there was a settlement, Mr. A. Smiley advised the court that the settlement was "pulled[]" before Plaintiff could accept it. (Doc. 195 at 194.) No party presented the court with the alleged settlement's terms, and Plaintiff's counsel did not object to the reading of the verdict. Insofar as a settlement was concerned, there was no meeting of the minds and no settlement for the court to enforce.

Judicial estoppel generally "bar[s] litigants from taking inconsistent positions in successive suits," *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 265 (2d Cir. 2018), and "will [typically] apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel[.]" *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citation omitted). It is limited "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* (citation and internal quotation marks omitted).

Although the doctrine generally applies to separate proceedings, the basic concept applies here. The court relied on Plaintiff's counsel's representation that there was no

3

settlement to accept the jury's verdict and enter judgment thereon. To now allow Plaintiff's counsel to represent that a settlement existed because he voiced an intention to accept an offer which Defendants contend was rescinded would encourage gamesmanship that would frustrate the administration of justice. A party could await the jury's verdict, determine whether it was favorable, and, if it was not, claim a settlement that was not memorialized in any manner, never presented to the court, and the existence of which is in dispute. Estoppel "prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true." *Estoppel*, *Black's Law Dictionary* (11th ed. 2019).

## CONCLUSION

Plaintiff's motion to enforce the settlement is therefore DENIED. (Doc. 190.) SO ORDERED.

Dated at Burlington, in the District of Vermont, this 10ᵗʰ day of June, 2024.

Christina Reiss, District Judge
United States District Court

4