# 24-0685-cv(L),
# 24-802-cv(XAP), 24-1592-cv(CON)

## United States Court of Appeals
### *for the*
## Second Circuit

———————————

RICHARD GRAJEDA,

*Plaintiff-Appellant-Cross-Appellee,*

— v. —

VAIL RESORTS INC., VAIL RESORTS MANAGEMENT COMPANY,
OKEMO LIMITED LIABILITY COMPANY, d/b/a Okemo Mountain Resort,

*Defendants-Appellees-Cross-Appellants,*

ENE EVALUATOR,

*Defendant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT (BURLINGTON)

## BRIEF FOR DEFENDANTS-
## APPELLEES-CROSS-APPELLANTS

MICHAEL J. CURTIS
KAHANA FELD LLP
*Attorneys for Defendants-Appellees-
Cross-Appellants*
800 Third Avenue, 16th Floor
New York, New York 10022
(914) 787-9239

## CORPORATE DISCLOSURE STATEMENT
## <u>PURSUANT TO F.R.A.P. 26.1</u>

Pursuant to F.R.A.P. 26.1, I hereby certify the following:

<u>Vail Resorts Inc.</u>

Vail Resorts Inc. is a publicly held corporation. It does not have a parent corporation and there is no corporation that owns 10% or more of its stock.

<u>Vail Resorts Management Company</u>

Vail Resorts Inc. is the parent corporation of Vail Resorts Management Company.

<u>Okemo Limited Liability Company d/b/a Okemo Mountain Resort</u>

Vail Resorts Inc. is the parent corporation of Okemo Limited Liability Company d/b/a Okemo Mountain Resort.


Dated: New York, New York
　　　　December 19, 2024

　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　**KAHANA & FELD, LLP**

　　　　　　　　　　　　　By: Michael J. Curtis, Esq.
　　　　　　　　　　　　　*Appellate Counsel for*
　　　　　　　　　　　　　*Defendants-Respondents*
　　　　　　　　　　　　　800 Third Avenue, 16th Floor
　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　(914) 787-9239
　　　　　　　　　　　　　mcurtis@kahanafeld.com

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT PURSUANT TO F.R.A.P. 26.1 ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iv

PRELIMINARY STATEMENT ..................................................................... 1

    Summary of the Case ............................................................................... 2

COUNTERSTATEMENT OF FACTS ......................................................... 3

    A.    The Trial, Settlement Discussions, and Verdict ................................... 3

        1.    The Parties, Claims, and Defenses ........................................... 3

        2.    Pre-Verdict Settlement Discussions .......................................... 5

        3.    The Impasse Note and Withdrawal of the Final Offer .............. 6

        4.    The Verdict Note, Smiley's Denial of Settlement, and Verdict ....................................................................................... 7

    B.    Plaintiff's Post-Verdict Settlement Claim ............................................ 9

        1.    Plaintiff's Motion to Enforce the Fabricated Settlement ........... 9

        2.    Defendants' Opposition ............................................................ 10

        3.    Plaintiff's Reply and Defendants' Sur-Reply ........................... 11

        4.    The District Court's Decision ................................................... 12

ARGUMENT ............................................................................................ 13

    POINT I

    THE DISTRICT COURT CORRECTLY FOUND THAT JUDICIAL ESTOPPEL PRECLUDES ENFORCEMENT OF A SETTLEMENT .................................................................................. 13

    A.    Applicable Law: Judicial Estoppel ..................................................... 14

    B.    Plaintiff Reversed His Settlement Position ........................................ 15

    C.    The Trial Court Relied on Plaintiff's Prior Settlement Position ................................................................................................ 19

D.     Plaintiff's Reversal Conferred Him an Unfair Advantage.................20

E.     Plaintiff Misstates the Controlling Law ...............................21

POINT II

PLAINTIFF IGNORES HIS OWN ACCOUNT OF THE
PARTIES' NEGOTIATIONS AND RELIES ON INAPPOSITE
CASELAW TO SUSTAIN HIS CONTRACTUAL ARGUMENT .............24

A.     The Final Offer Was No Longer Available When Plaintiff
Claims to Have Accepted It ...............................................25

     1.     In Plaintiff's Counsel's Version, the Final Offer Had
Lapsed ...............................................................25

     2.     Mitchell's Account Confirms that He Withdrew The
Final Offer After Plaintiff's Counsel Rejected It ....................26

B.     The Caselaw That Plaintiff Cites Is Inapplicable................................30

POINT III

THERE IS NO BASIS FOR AN EVIDENTIARY HEARING....................33

POINT IV

PLAINTIFF WAIVED HIS CLAIM OF AN ENFORCEABLE
SETTLEMENT AGREEMENT ....................................................36

CONCLUSION .......................................................................38

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Adelphia Recovery Trust v. Goldman Sachs & Co.,
   748 F.3d 110 (2d Cir. 2014) ................................................................14

Am. Home Assur. Co. v. A.P. MollerMaersk A/S,
   609 Fed. Appx. 662 (2d Cir. 2015) ....................................................36

AXA Mar. & Aviation Ins. (UK) v. Seajet Indus.,
   84 F.3d 622 (2d Cir. 1996) ................................................................14

Baldwin v. Gavin,
   6 Fed. Appx. 107 (2d Cir. 2001) ........................................................26

CBF Industria de Gusa v. AMCI Holdings, Inc.,
   850 F.3d 58 (2d Cir. 2017) ................................................................36

Clark v. AII Acquisition, LLC,
   886 F.3d 261 (2d Cir. 2018) ..............................................................15

Decker v. Vermont Educ. TV,
   13 F. Supp. 2d 569 (D. Vt. 1998) ......................................................14

DeRosa v. Natl. Envelope Corp.,
   595 F.3d 99 (2d Cir. 2010) ................................................................14

Eastman v. Union Pacific R.R. Co.,
   493 F.3d 1151 (10th Cir. 2007) ..........................................................22

Gonyea v. John Hancock Mut. Life Ins. Co.,
   812 F. Supp. 445 (D. Vt. 1992) ..........................................................36

Henderson v. O'Malley,
   2024 U.S. App. Lexis 7113 (2d Cir. 2024) ........................................22

Intellivision v. Microsoft Corp.,
   484 Fed. Appx. 616 (2d Cir. 2012) ....................................................15

Jacob v. City of New York,
   315 U.S. 752 (1942) ..........................................................................21

Knaresborough Enters., Ltd. v. Dizazzo,
   214 Vt. 32 (Sup. Ct. 2021) ................................................................23

iv

Langlois/Novicki Variance Denial,
  2017 VT 76 ...................................................................................23

Miller v. Fenton,
  474 U.S. 104 (1985)........................................................................15

Morgan v. Sundance, Inc.,
  142 S.Ct. 1708 (2022).....................................................................37

Motorola Credit Corp. v. Uzan,
  509 F.3d 74 (2d Cir. 2007).............................................................37

New Hampshire v. Maine,
  532 U.S. 742 (2001)..................................................................14, 15

Noce v. Kaufman,
  2 N.Y.2d 347 (1957)........................................................................17

Okemo Mountain v. Okemo Trailside Condominiums,
  139 Vt. 433 (1981)...........................................................................27

Puckett v. United States,
  556 U.S. 129 (2009)........................................................................36

Quenneville v. Buttolph,
  175 Vt. 444 (2003)...........................................................................33

Rodal v. Anesthesia Group of Onondaga, P.C.,
  369 F.3d 113 (2d. Cir. 2004)..........................................................16

Sewell v. 1199 Nat'l Ben. Fund for Health & Human Servs.,
  187 F. App'x 36................................................................................15

Sisters & Bros. Inv. Group v. Vt. Nat'l Bank,
  172 Vt. 539 (2001)...........................................................................26

Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry.,
  762 F.3d 165 (2d Cir. 2014)...........................................................37

State v. Philip Morris USA Inc.,
  183 Vt. 176 (2008)...........................................................................33

Stichting v. Schreiber,
  407 F.3d 34 (2d Cir. 2005)..............................................................22

United States v. Bayless,
  201 F.3d 116 (2d Cir. 2000)...........................................................37

United States v. Yu-Leung,
  51 F.3d 1116 (2d Cir. 1995) ................................................................37

Vitrano v. State Farm Ins. Co.,
  2009 US Dist LEXIS 96938 (S.D.N.Y. 2009) ......................................22

Wal-Mart Stores Tex. LLC v. Shirey,
  Tex. App. LEXIS 945 (Tx. Ct. App. 2020) ...........................................32

Winston v. Mediafare Entm't Corp.,
  777 F.2d 78 (2d Cir. 1986) ..................................................................33

Yaros v. Trustees of the Univ. of. Pa.,
  1999 PA Super 303 (1999) ...................................................................23

Zervos v. Verizon N.Y, Inc.,
  252 F.3d 163 (2d Cir. 2001) ................................................................15

**Statutes & Other Authorities:**

Restatement 2d of Contracts, § 42 ...........................................................29

## **PRELIMINARY STATEMENT**

Plaintiff brings this appeal to enforce a pre-verdict settlement offer that he diligently rejected in favor of a gamble on a $97 million jury verdict. Having told the trial court that there was no settlement because the defendants had withdrawn their offer before he could accept it, plaintiff agreed to hear the verdict. After the jury returned a defense verdict, plaintiff reversed course and insisted that he had accepted defendants' offer – the same one he told the trial court was no longer available. The District Court correctly determined that judicial estoppel barred this about-face.

Plaintiff cannot escape the crystal-clear record. Rather than telling the trial court that he accepted defendants' offer, moving to enforce the settlement, or objecting to hearing the verdict, plaintiff did the opposite. He told the court there was no settlement and agreed to hear the verdict. Disliking the outcome is no basis for disregarding the verdict and counsel's prior statements on which the trial court relied. Moreover, none of the elements of contract formation exist here because defendants' words and conduct conclusively establish that they did not intend to be bound. There was no offer available at the time of plaintiff's attempted acceptance, precluding the requisite meeting of the minds. Accordingly, the Court should decline to enforce a settlement which never existed and which the District Court rightly rejected.

1

### *Summary of the Case*

Plaintiff Richard Grajeda was rendered paraplegic in a skiing accident at Okemo Mountain Resort. Before and during trial, he rejected numerous settlement offers, including the final offer that defendants made as jury deliberations began. Plaintiff steadfastly rejected this final offer even as several juror notes revealed that the jury had reached an impasse on the threshold liability questions and that a defense verdict was probable. After the trial court gave an <u>Allen</u> charge, defendants' insurance representative, Daniel Mitchell ("Dan" or "Mitchell"), correctly anticipating a liability victory, told plaintiff's counsel that he was withdrawing the final offer and ending settlement discussions. Mitchell added that he would be open to further negotiations if the jury remained deadlocked, but until such time, settlement talks were over. After that conversation, Mitchell, who had spent the entire day in court negotiating with plaintiff's counsel, left the building.

Shortly after the <u>Allen</u> charge, the jury reached a verdict, prompting plaintiff's counsel to rush to contact Mitchell and see if he would renew the final offer. But by then it was too late – Mitchell, having already withdrawn the offer, wanted to hear the verdict. Plaintiff's counsel told the trial court that there was no settlement and that the offer had been withdrawn *before* he could accept it. Tellingly, he did not move to enforce the settlement or so much as object to defendants' purported

gamesmanship. Instead, without objection, counsel agreed to hear the verdict. The jury returned a defense verdict.

The next day, plaintiff claimed for the first time that the parties had executed an enforceable settlement agreement *before* the jury's verdict. After extensive motion practice, the District Court correctly denied plaintiff's motion, finding that there was no enforceable settlement agreement and that, at any rate, plaintiff's argument was precluded by judicial estoppel. The District Court cogently recognized the perverse incentive that would be created by permitting a litigant to review a jury verdict before binding himself to a settlement agreement.

For these and other reasons detailed below, this Court should affirm the District Court's order.

## COUNTERSTATEMENT OF FACTS

A.   The Trial, Settlement Discussions, and Verdict

1.   The Parties, Claims, and Defenses

On December 19, 2019, plaintiff, Richard Grajeda became paraplegic after colliding with a snowmaking machine while skiing at Okemo Mountain Resort, in Ludlow, Vermont. The defendants, Vail Resorts, Inc., Vail Resorts Management Company, and Okemo Limited Liability Company d/b/a/ Okemo Mountain Resort (collectively "defendants") were the corporate entities that together owned and operated the resort (A31-38, A2699).

3

At trial, plaintiff was represented by a team of attorneys led by Andrew Smiley ("Smiley")[1] (A61). Plaintiff claimed that defendants negligently placed and padded the subject snowmaking machine (A2508-2512, 2538, 2699). In recounting his accident, plaintiff testified that he was maintaining his speed and practicing his turns when fell on a patch of ice, slid down the mountain and then slid underneath the snowmaking machine's padding and struck its steel pole base (A178-81).

Defendants were represented by a team of attorneys, led by Craig May and Thomas Aicher (A61). Defendants disputed plaintiff's improper placement/padding claims and argued that the accident stemmed from the inherent risks of skiing and plaintiff's inexperience and marijuana consumption (A2585, 2594-2596). Defendants relied on the testimony of Okemo employee Ray Kennedy, the sole accident eyewitness (A1722-23, A2602). Kennedy testified that plaintiff "did not fall" and "was standing up when he skied into the pad" (A1728), and that it was a "hard impact" (A1778).[2]

Defense counsels' only role was trying the case; settlement negotiations were handled exclusively by Mitchell of AIG (A2820). Neither May, nor Aicher, nor any

---

[1] During trial this included Guy Smiley (Andrew's father) and Michael Solomon (A46). On the date of the verdict, they were joined by an additional attorney, Jason D. Friedman (A2744-46). Because Guy Smiley's role was secondary, "Smiley" will refer to Andrew Smiley unless otherwise indicated.

[2] While Kennedy's testimony also touched on the placement and necessity of the snowmaking machine at issue, both parties produced experts whose testimony more deeply explored those issues (A518-585, A2038-2145).

4

other member of the defense team had authority to negotiate or settle plaintiff's claims on defendants' behalf (A2820). Joy Posner, a representative of another excess insurer (AXA XL) providing coverage relating to plaintiff's claim, was present for some settlement discussions, but authority always rested solely with Mitchell. To evaluate the evidence and engage in settlement negotiations, Mitchell was present in court for the duration of trial. He saw nearly all the witness testimony and proceedings, beginning with opening statements on February 2, 2024, (A42, A2820).

2.    Pre-Verdict Settlement Discussions

The parties had discussed settlement before and throughout trial, with Mitchell conveying a written offer on February 9, 2024 and Smiley rejecting it (A2753-58). On Friday, February 16, 2024, the parties gave their summations and the trial court charged the jury. The jury began deliberating at 2:32 p.m. (A2671) and Smiley discussed settlement with Mitchell and (excess insurance representative) Joy Posner (A2820). During this conversation, Mitchell conveyed what came to be known as the "Final Offer" – defendants' best and final settlement offer – and proposed figures for a high/low agreement (A2820). Smiley did not accept either the Final Offer or the proposed high/low, and instead countered with a higher bracket demand for negotiations, which Mitchell rejected (A2820). Mitchell remained in the courthouse in case Smiley wanted to continue negotiating.

Over the next several hours, the jury sent several notes regarding liability. At 4:45 p.m., the jury asked for a readback of eyewitness Ray Kennedy's testimony (A2672-73), whose account of the accident conflicted with plaintiff's. At 6:11 p.m., the jury asked for clarification regarding certain terms relevant to the application of Vermont's Sports Injury Statute (2674, 2713-14). Mitchell, still in the courthouse, viewed the notes as favorable to the defense because they indicated that the jury was still considering the question of defendants' liability after nearly four hours of deliberation (A2820-21).

A short time later, Joy Posner spoke with Smiley privately. She reiterated the Final Offer and encouraged him to accept it, cautioning that a defense verdict would leave the plaintiff with nothing (A2821). Smiley rejected the Final Offer and continued to seek a higher figure (A2821).

3.    The Impasse Note and Withdrawal of the Final Offer

At 8:20 p.m., after nearly six hours of deliberations, the jury sent a note asking, "what happens when jury is at impasse [sic]?" (A2674-75). The trial court gave the jury a modified Allen charge (with the offer to break and resume deliberations the following week) and deliberations resumed at 8:44pm (A2675-82).

Smiley then asked to speak to Mitchell privately, during which conversation Mitchell withdrew the Final Offer by telling Smiley that he wanted to hear from the jury before having any further settlement talks (A2821). With settlement talks over,

there was no need for Mitchell to remain in the courthouse (where he had been for more than eleven hours by that point)[3] and he told Smiley as much (A2821). Smiley asked if Mitchell would be willing to continue negotiations in the event of a hung jury. Mitchell responded that he was available by phone and would not be leaving town until the following morning. Mitchell then left the courthouse (A2821). Critically, Smiley does not dispute that (1) Mitchell told him that he wanted to hear from the jury before having any further settlement talks and (2) Mitchell left the courthouse after this conversation. (A2737, A2838-39).

4.    <u>The Verdict Note, Smiley's Denial of Settlement, and Verdict</u>

At 9:13 p.m., the trial court informed the parties that there was a verdict (A2684). Smiley asked to speak to plaintiff before the jury returned to the courtroom, which the trial court permitted (A2684). At 9:17 p.m., Smiley told the court that "there was an offer that our client wants to accept before the verdict, and he just told us that he wants to accept it and wants me to call the claims adjuster and take that offer…[a]nd that's what I'm stepping out to do" (A2684). The trial court instructed the parties that if there was a settlement agreement, "[t]hen we are not going to hear the verdict" (A2684). The court told the parties that it needed to know whether there was a settlement "before we call off the verdict" (A2685). When the court asked defense counsel Aicher about settlement, Aicher responded that he was "not in the

---

[3] Proceedings that day started at 8:30 a.m. and opening statements at 9:17 a.m. (A2495; A2503).

loop" on settlement discussions and that "none of [the defense attorneys] had any authority" to settle the matter (A2685). Smiley did not dispute Aicher's response and told the court that he was trying to telephone Mitchell (A2685). The court agreed and held the jury back (A2685-86).

Mitchell did not answer Smiley's calls, but Smiley neither texted nor left a voicemail (A2738). Eventually, defense counsel May reached Mitchell by phone and advised him that plaintiff desired to settle the case for an amount equal to the Final Offer. But given the Verdict Note and his belief that a defense verdict was imminent, Mitchell instructed May to take the verdict (A2821). When the parties returned to the courtroom, Smiley and the trial court engaged in the following colloquy (with no interjection from any member of the defense team):

> THE COURT: Do we have a settlement?
> SMILEY: Apparently it was just pulled, so –
> THE COURT: It was just pulled?
> SMILEY: Yeah.
> THE COURT: Before you had the opportunity to accept it?
> SMILEY: Yes, your Honor.
> THE COURT: Okay. All right. We will bring back the jurors.
>
> (A2686-87).

Without objection from Smiley or plaintiff's three other attorneys, the jury entered the courtroom and returned a defense verdict (A2687-88). The jury was then polled and discharged (A2688-90). Again, none of plaintiff's attorneys objected to the verdict or requested to make a record of a settlement agreement (A2688-90).

8

B.    Plaintiff's Post-Verdict Settlement Claim

The following day, Smiley's office emailed a letter to Mitchell, May, Aicher, and Posner, informing them that "Defendants' [settlement] offer…was accepted in the courtroom prior to the reading of the jury verdict," and that plaintiff was seeking enforcement of same (A2762-64). The letter made no mention of Smiley's on-the-record confirmation that the settlement offer was withdrawn before plaintiff could accept it. Later that day, May responded to Smiley via email that that the letter was incorrect and that "Mr. Smiley acknowledged to the court that there was no settlement" (A2768).

1.    Plaintiff's Motion to Enforce the Fabricated Settlement

Three days after the verdict, plaintiff moved to enforce a settlement on the grounds that Defendants never withdrew the Final Offer and plaintiff accepted it before allowing the verdict to be read (A2716-2732). In support, Smiley tendered a declaration averring that Mitchell conveyed the Final Offer after the jury began deliberating and that Smiley did not accept the Final Offer but continued negotiating (A2735-36). Smiley also claimed that during their final conversation (after the Impasse Note), Mitchell told him that he was leaving the courthouse and was flying home the following morning (A2737). Smiley asked if Mitchell's position would change if the jury remained deadlocked, to which Mitchell responded that "the Final Offer remains the same and [Defendants'] position has not changed and that

9

[Smiley] could reach out to [Mitchell] on his cell phone at anytime *as the jury continued deliberating into the evening*" (A2737) (emphasis added).

Smiley's excuse for telling the trial court directly that there had been no agreement was that his statement "refer[ed] to the fact that [Smiley] was unable to **communicate** [plaintiff's] acceptance to [Mitchell], because [Mitchell] wouldn't answer [Smiley's] calls" (A2739 (emphasis added)). Yet this *post hoc* rationalization cannot explain why he (1) did not tell the trial court about his inability to speak with Mitchell, (2) never mentioned his purported acceptance of the settlement agreement to the court, and (3) did not object to hearing the jury's verdict despite an alleged agreement being reached.

2.   <u>Defendants' Opposition</u>

Defendants countered that (1) Smiley's unequivocal representation to the trial court that the Final Offer was withdrawn before he could accept it and (2) plaintiff's agreement to hear the verdict judicially estopped him from arguing that the case was settled before the verdict (A2776-2779). Defendants also argued that plaintiff waived his claim that there was an enforceable settlement agreement (A2779-2781).

Next, defendants argued that even if plaintiff's account of events were accurate, this would not create an enforceable agreement because the parties' words, prior conduct, custom and practice, and common sense dictated that Mitchell only intended the Final Offer to remain available until there was a verdict or subsequent

10

jury note – in other words, continued deliberations were a condition precedent to the Final Offer remaining open (A2781-2786). Defendants also argued that public policy warranted denial of plaintiff's motion since enforcement of the settlement agreement would be an endorsement of "gotcha contracts" and would wreak broad havoc on settlement negotiations beyond this case (A2786-87).

Finally, defendants argued that the incredible nature of plaintiff's claims[4] warranted summary denial of the motion, and at a minimum created factual issues requiring a hearing (given the credibility issues raised by Smiley's self-serving claims and Mitchell's conflicting account) (A2787-89).

3.   Plaintiff's Reply and Defendants' Sur-Reply

Plaintiff replied that Mitchell's final words to Smiley were ambiguous and, therefore, did not revoke the Final Offer (A2827-33). Specifically, while Smiley acknowledged that Mitchell said "he wanted to hear from the jury" before having further negotiations, he claimed not to have interpreted this as a withdrawal (A2838). He further argued that Smiley's failure to advise the trial court about the purported settlement agreement was not a waiver because it was an oversight, not a tactic (A2833-34). He also claimed that defendants' judicial estoppel argument was barred by equitable estoppel because defense counsels "unfairly" told the trial court that

---

[4] Most implausibly, "[t]hat a seasoned and experienced attorney would leave [the] Court with the misapprehension that there was no enforceable settlement agreement when there in fact was one, and that he would then permit he jury to render a verdict without a word of protest" (A2788).

11

they were uninvolved in settlement discussions and failed to stop Smiley from telling the court that Mitchell had withdrawn the Final Offer before Smiley accepted it (A2833-35).

Because plaintiff's reply advanced new facts and arguments via a supplemental declaration from Smiley (A2837-41), the District Court permitted defendants to submit a sur-reply. In it, Defendants disposed of plaintiff's equitable estoppel argument by pointing out that they did not make a factual misrepresentation, were not involved in settlement discussions, lacked authority to participate in negotiations, and had no obligation (or knowledge) to stop Smiley from telling the trial court that there was no settlement (A2851-55).

4.   The District Court's Decision

The District Court denied plaintiff's motion on the grounds that (1) he failed to establish the elements of contract formation and (2) his post-verdict motion was barred by judicial estoppel (A2919-2922). "Insofar as a settlement was concerned, there was no meeting of the minds and no settlement for the court to enforce." (A2921). Further, because the District Court "relied on Plaintiff's counsel's representation that there was no settlement to accept the jury's verdict and enter judgment thereon," judicial estoppel barred his enforcement motion (A2921-22). The court opined that "[t]o now allow Plaintiff's counsel to represent that a settlement existed because he voiced an intention to accept an offer which

Defendants contend was rescinded would encourage gamesmanship that would frustrate the administration of justice[,] [because] [a] party could await the jury's verdict, determine whether it was favorable, and, if it was not, claim a settlement that was not memorialized in any manner, never presented to the court, and the existence of which is in dispute." (A2922).

For the following reasons, the Court should affirm the District Court's order.

## ARGUMENT

## POINT I

### THE DISTRICT COURT CORRECTLY FOUND THAT JUDICIAL ESTOPPEL PRECLUDES ENFORCEMENT OF A SETTLEMENT

Before the jury rendered its verdict, plaintiff unequivocally told the trial court that defendants withdrew the Final Offer before his counsel could accept it. After the jury returned a defense verdict, however, plaintiff about-faced and claimed that there was an enforceable settlement agreement to which defendants were bound. The District Court correctly found that this claim flatly contradicted plaintiff's prior position, on which the trial court relied in permitting the jury to render its verdict, and would give plaintiff an unfair advantage by his reversal. The court therefore found that judicial estoppel precluded plaintiff's enforcement motion. Plaintiff fails to establish a basis for reversal of this holding.

13

A.    Applicable Law: Judicial Estoppel

"Judicial estoppel is a doctrine that forbids a party from advancing contradictory factual positions in separate proceedings." AXA Mar. & Aviation Ins. (UK) v. Seajet Indus., 84 F.3d 622, 628 (2d Cir. 1996); see also Decker v. Vermont Educ. TV, 13 F. Supp. 2d 569, 573 (D. Vt. 1998) The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

While "the exact criteria for invoking judicial estoppel will vary based on 'specific factual contexts,'" several factors usually govern the applicability of the doctrine. Adelphia Recovery Trust v. Goldman Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014) quoting New Hampshire, 532 U.S. at 751. Typically, the doctrine will apply if: "(1) a party's later position is 'clearly inconsistent' with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." DeRosa v. Natl. Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) citing New Hampshire, 532 U.S. at 750-51. Additionally, "[b]ecause the doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." Adelphia Recovery Tr., supra.

14

It is well-established that "the district court is the 'judicial actor . . . better positioned' to determine whether the criteria for invoking judicial estoppel have been met within the particular factual context of a given case." Clark v. AII Acquisition, LLC, 886 F.3d 261, 265 (2d Cir. 2018) (quoting Miller v. Fenton, 474 U.S. 104, 114 [1985]). As such, in the Second Circuit "a district court's invocation of judicial estoppel is reviewed only for abuse of discretion." Clark, supra. Under this standard, the district court's decision will not be disturbed unless it was "the product of a legal error or a clearly erroneous factual finding" or when the decision "cannot be located within the range of permissible decisions." Zervos v. Verizon N.Y, Inc., 252 F.3d 163, 169 (2d Cir. 2001).

B.    Plaintiff Reversed His Settlement Position

Here, the District Court soundly concluded that judicial estoppel barred plaintiff's enforcement motion. First, there is no serious dispute that plaintiff reversed his settlement position after the verdict.[5] Minutes before the verdict, plaintiff's counsel agreed, without objection, that there was no settlement because

---

[5] To be sure, judicial estoppel precludes reversals within the same case. The Second Circuit has rejected the argument that judicial estoppel requires a party's prior representation to be adopted by a different court in a separate proceeding, and instead "has recognized that a prior inconsistent representation made in a prior phase of the same case *can* trigger judicial estoppel." Intellivision v. Microsoft Corp., 484 Fed.Appx.616, 621 (2d Cir. 2012) (emphasis in original); see also Sewell v. 1199 Nat'l Ben. Fund for Health & Human Servs., 187 F.App'x 36, 40 (2d Cir. 2006 (summary order) ("Judicial estoppel 'prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase'" (quoting New Hampshire, 532 U.S. at 749 [2001]).

defendants had withdrawn the Final Offer "[b]efore [he] had an opportunity to accept it" (A2687). After the verdict, however, plaintiff claimed for the first time that, in fact, the parties had reached a pre-verdict settlement. He advanced this claim in his settlement enforcement motion, arguing that "the Final Offer had been accepted in open court and conveyed to Defense counsel, before it was pulled" (A2722). These claims are diametric opposites: in the first iteration the offer was withdrawn and never accepted, in the later iteration the offer was accepted and never withdrawn. Accordingly, these statements "cannot be reconciled with any amount of explanation." <u>Rodal v. Anesthesia Group of Onondaga, P.C.</u>, 369 F.3d 113, 119 (2d. Cir. 2004) (citations and quotations omitted).

To dispute the indisputable, plaintiff urges this Court to make a *de novo* factual finding. Specifically, he asks the Court to look beyond the plain meaning of his counsel's statements to the trial court and divine an interpretation that (conveniently) means exactly the opposite of what he said on the record. Plaintiff argues that Smiley's unequivocal statement that the offer was withdrawn before he could accept it "merely reflected the incontrovertible fact that a stipulation of settlement could not be put on the record not because the settlement offer was withdrawn, but because defendants' carrier refused to honor same" (Pl. Br. 23). He adds that "[p]laintiff's position was consistently that he accepted the settlement but that he could not confirm same on the record" (Pl. Br.52).

16

The trial record, controlling decisional law, and common sense refute these claims. Even Smiley acknowledged that these assertions do not reflect what he actually said, but what he "should have" said (A2888). Moreover, the caselaw that plaintiff cites in his own brief supports the District Court's holding (Pl. Br. 20 ["Relatedly, 'where one party to an action, knowing the truth of a matter and controversy and having the evidence in his possession, omits to speak, every inference against him warranted by the evidence may be considered.' See, <u>Noce v. Kaufman,</u> 2 NY2d 347, 353 [1957]" (other citations omitted)]).

When first raising settlement to the District Court, Smiley never claimed that he had accepted an open offer and settled the case. Instead, Smiley said that "there *was* an offer that our client *wants* to accept before the verdict," and that plaintiff "wants to accept it and wants me to call the claims adjuster and take that offer" (A2684, emphasis added). The only reasonable meaning of this statement is that plaintiff wanted to ask Mitchell whether defendants' *prior* offer was still available, given the impending verdict. Critically, this comports with both accounts of Mitchell's and Smiley's final conversation, as we detail in Point II. It is also exactly how the trial court interpreted Smiley's statement, which is why Judge Reiss noted during oral argument of plaintiff's enforcement motion that the statement gave her

"the firm impression that [Smiley] [was] seeking to see if the offer was still available" (A2912).[6]

At no point before the verdict did plaintiff claim that he had successfully accepted the offer and bound defendants to a settlement. Nor did he did suggest that defendants had reneged. Instead, plaintiff's counsel told the court, without objection, that defendants withdrew the offer before he could accept it. Then, he (and his three co-counsels) agreed to hear the verdict (A2686-87).

Plaintiff even tried pointing the finger at the District Court, arguing that he declined to object because "[his] read on it was that your Honor wouldn't be hearing it" (A2888) and that, "after 12 hours of being here…I had no expectation that whatever I would say to the Court would put [the] brakes on this jury coming in for us to has all of this out. So that's why I didn't say that…there was no time to do that" (A2880). The District Court rightly rejected this excuse (A2889). The record confirms that the trial court held the jury and permitted plaintiff's counsel to call Mitchell and attempt a last-minute settlement. Plaintiff's claim that the trial court would not have countenanced an oral settlement enforcement motion or, at the very least, an objection is an unfalsifiable counterfactual that (again, conveniently) serves plaintiff's narrative. But nothing in the trial record supports this theory.

---

[6] See also A2875 ("The Court: But you were not telling me there was [a] settlement. I mean, I'm reading from the transcript. You're telling me, 'I need to call the claims adjuster.'").

18

Indeed, the only reasonable explanation for why plaintiff did not tell the trial court that there was an enforceable settlement agreement is because there was none. Plaintiff's counsel essentially admitted this at oral argument, claiming that he did not make a record of the alleged settlement because "I didn't have the case law that I'd be able to cite to the Court that I have now that makes it clear that our relaying it to defense counsel is satisfactory" (A2779-80). In other words, when counsel told the court that there was no settlement agreement, he meant exactly that – disliking the outcome does not change the facts. Plaintiff's irreconcilable positions therefore satisfy the first element of judicial estoppel.

C.    The Trial Court Relied on Plaintiff's Prior Settlement Position

The facts readily satisfy the doctrine's second element, which requires that the court adopt plaintiff's prior position. The District Court's decision plainly states that "[t]he court relied on Plaintiff's counsel's representation that there was no settlement to accept the jury's verdict and enter judgment thereon" (A2921-22). This is borne out by the trial transcript, which establishes that, after receiving the Verdict Note, the court intended to summon the jury and hear the verdict (A2684). The court only delayed after Smiley raised the prospect of a settlement, at which point the court advised the parties that they were "not going to hear the verdict" if there was a settlement agreement (A2684-86). The court then held back the jury so that Smiley could attempt to settle the case (A2684-86). The court continued to hold the jury

19

until Smiley returned to the courtroom and affirmed that there was no settlement (A2686-87). Based on this statement, the court immediately took the verdict (A2687). This establishes that the court would not have heard the jury's verdict if plaintiff had claimed there was a settlement agreement; it only did so because of Smiley's confirmation that there wasn't one.

Plaintiff argues that he "cannot be faulted for the jury's rendering a verdict that the trial court stated would be taken if the parties could not agree to an on-the-record settlement, an act that would have allowed the trial court to disband the jury" (Pl. Br. 53). In fact, plaintiff *can and must* bear this fault. The trial court rightly inquired whether there was a settlement agreement and Smiley answered in the negative. Absent an objection or even a hint from any of plaintiff's four attorneys that there was an enforceable settlement agreement or any controversy regarding the existence of same, there was no need for further inquiry, and nothing left for the court to do except hear the verdict.

D.    Plaintiff's Reversal Conferred Him an Unfair Advantage

The third element, requiring that plaintiff derive an unfair advantage from his conflicting positions, is likewise satisfied by his reversal here. Specifically, plaintiff was able to hear the jury's verdict before deciding whether to seek enforcement of the purported settlement agreement. Plaintiff's dissatisfaction with the verdict does not extinguish the benefit that he derived from knowing it. Rather, the unfair

20

advantage was having this hindsight: plaintiff had the opportunity to learn the verdict and then decide whether to seek enforcement of a purported settlement agreement.

To fully appreciate this unfairness, the Court need only consider how plaintiff would have proceeded had the jury awarded the $97 million that his counsel requested in summation (or *any* amount greater than defendants' Final Offer): plaintiff would not have moved to resurrect an offer for the lesser amount. Indeed, defendants and the courts never would have heard the alternate version of events that plaintiff now tells.

Recognizing this inequity, the District Court aptly noted that permitting plaintiff's reversal would encourage litigants to moot unfavorable verdicts by manufacturing *post hoc* settlement agreements (A2922). This would make a mockery of the "fundamental and sacred" right to a jury trial (Jacob v. City of New York, 315 U.S. 752, 752-53 [1942]) and remove the finality that ordinarily attaches to a verdict. A deluge of needless post-trial motion and appellate practice would swamp the courts. This critical policy concern necessitates affirmance.

E.    Plaintiff Misstates the Controlling Law

Plaintiff argues for the first time on appeal that judicial estoppel is inapplicable because Vermont has not affirmatively adopted it (Pl. Br. 53). Before the District Court, however, plaintiff conceded that the federal doctrine governs this

21

case (A2834). Thus, the Court should reject plaintiff's new argument as unpreserved. See Henderson v. O'Malley, 2024 U.S. App. Lexis 7113, *2-*3 (2d Cir. 2024).

Preservation aside, however, plaintiff misstates the law. The *federal* judicial estoppel doctrine applies in diversity jurisdiction cases because it is the integrity of the *federal* court that is at stake in such instances. "The doctrine of federal judicial estoppel is foremost designed to protect the federal judicial process" and a "federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all of the claims arise." Eastman v. Union Pacific R.R. Co., 493 F.3d 1151, 1156 (10th Cir. 2007). This is why the Second Circuit applies the federal judicial doctrine in diversity cases. See Stichting v. Schreiber, 407 F.3d 34, 45-46 (2d Cir. 2005) (applying the federal judicial estoppel doctrine in a diversity jurisdiction case); Vitrano v. State Farm Ins. Co., 2009 US Dist LEXIS 96938, at *10-11 (S.D.N.Y. 2009) (same).

Plaintiff also argues that the judicial estoppel doctrine is inapplicable because "there is clearly no evidence that the Court assumed any position with respect to this issue, nor is there any proof that defendants relied to their detriment on plaintiff's actions" (Pl. Br. 53). This argument misses the mark, both on the facts and the law. First, the Court *did* rely on plaintiff counsel's representation that there was no settlement agreement in permitting the jury to deliver its verdict (A2921-22). Second, judicial estoppel does not require that *defendants* have relied to their

22

detriment on any of plaintiff's positions[7]. Plaintiff's reference to <u>Knaresborough</u> <u>Enters., Ltd. v. Dizazzo</u>, 214 Vt. 32 (Sup. Ct. 2021) is misplaced because <u>Knaresborough</u> concerns the applicability of *equitable* estoppel, not judicial estoppel.[8] Defendants below did not advance an equitable estoppel argument,[9] nor did the District Court make any findings in that regard.

This Court should also reject plaintiff's argument that judicial estoppel does not bar his conflicting arguments because "<u>Yaros v. Trustees of the Univ. of. Pa.,</u> 1999 PA Super 303 (1999) and its progeny clearly establish that a party can accept a settlement notwithstanding the jury or finder of fact rendering a verdict" (Pl. Br. 52). <u>Yaros</u>[10] is a highly distinguishable intermediate appellate court decision from Pennsylvania that does not even mention judicial estoppel. In that case, the plaintiff accepted an open-ended offer *before* the jury was even charged and plaintiff's counsel immediately advised both the trial court and defense counsel of his

---

[7] Of course, defendants did rely on plaintiff's statement that no settlement existed by agreeing to hear the verdict. Had plaintiff insisted to the contrary, defendants certainly would have charted a different course by, for instance, insisting on hearing the settlement's terms.

[8] <u>See</u> <u>Id.</u> at 43 ("Furthermore, plaintiff has failed to demonstrate that it relied on the alleged stipulation to its detriment, as is required to establish estoppel. <u>See</u> <u>Langlois/Novicki Variance</u> <u>Denial</u>, 2017 VT 76, ¶13) (listing elements of equitable estoppel)") (citation and parenthetical in original).

[9] Plaintiff argued in his reply that defendants should be equitably estopped from challenging plaintiff's claim that there was an enforceable settlement agreement. Defendants disputed this claim in their sur-reply, but the District Court did not address it in its decision.

[10] Plaintiff did not cite this case before the District Court.

acceptance. Id. at P3. Unlike here, the Yaros plaintiff did not reverse her initial denial of settlement in response to an unfavorable verdict.

Plaintiff thus fails to demonstrate that judicial estoppel is inapplicable here. To the contrary, the instant action is the poster child for the doctrine's necessity and rightful application. Accordingly, this Court should affirm the District Court's provident judicial estoppel holding.

## POINT II

### PLAINTIFF IGNORES HIS OWN ACCOUNT OF THE PARTIES' NEGOTIATIONS AND RELIES ON INAPPOSITE CASELAW TO SUSTAIN HIS CONTRACTUAL ARGUMENT

Plaintiff urges this Court to find an enforceable settlement agreement on the grounds that (1) plaintiff accepted defendants' Final Offer by conveying his acceptance to defendants' trial counsel team, which had no knowledge of, and was uninvolved in, the parties' settlement negotiations, and (2) other courts have enforced mid-trial settlement agreements under different circumstances. Both contentions ignore the factual record before this Court and, accordingly, do not support reversal of the District Court's order. At bottom, neither Smiley's nor Mitchell's account of the parties' discussions creates an enforceable settlement agreement.

A.   The Final Offer Was No Longer Available
     When Plaintiff Claims to Have Accepted It

The parties tendered two competing accounts of their settlement discussions before the District Court. Plaintiff advanced his through the declarations of his counsel, Andrew Smiley, and defendants theirs through the declaration of their insurance representative, Daniel Mitchell. These accounts do not raise a material issue of fact as to the existence of a contract, however, because both indicate that the Final Offer was not available when plaintiff tried to accept it.

1.   In Plaintiff's Counsel's Version, the Final Offer Had Lapsed

According to plaintiff's counsel's own account of their final conversation, Mitchell made the Final Offer contingent on continued jury deliberation (A2736-37) (emphases added):

> I asked [Dan] if their settlement position might change and increase if the jury was at an impasse or if we had a hung jury. *Dan advised me that they are not considering any increases to their Final Offer but would be open to further discussion if we learned later in the evening that the jury was hung or at a further impasse.* I specifically advised Dan that the plaintiff was still struggling with whether to accept the Final Offer before a jury verdict. Dan responded "I understand this is a difficult decision for him." I further asked Dan if his Final Offer would be withdrawn if the jury came back as a hung jury due to impasse. Dan responded that the Final Offer remains the same and their position has not changed *and that I could reach out to him on his cell phone at anytime as the jury continued deliberating into the evening.*

The phrase "as the jury continued deliberating" is dispositive. It confirms that Mitchell did not extend an open-ended and unconditional offer, but a definite offer

25

with a condition precedent to acceptance. <u>Sisters & Bros. Inv. Group v. Vt. Nat'l Bank</u>, 172 Vt. 539, 542 (2001) ("Once a special condition or condition precedent in the contract is fulfilled, the contract becomes binding on both parties. Alternatively, nonoccurrence of the condition discharges the parties' duty to perform."). That condition precedent was the jury's continued deliberation. In other words, once the jury stopped deliberating, the Final Offer lapsed. Because the Verdict Note marked the end of the jury's deliberations, it extinguished the Final Offer. There was no acceptance because there was no offer to accept.

Because the Verdict Note terminated the condition precedent to acceptance, the District Court correctly found that the requisite meeting of the minds was absent (A2921). This finding is entitled to deference absent clear error. <u>See</u> <u>Baldwin v. Gavin</u>, 6 Fed. Appx. 107, 109 (2d Cir. 2001) ("In the context of a motion to enforce a settlement, we review the district court's conclusions of law de novo and its factual findings for clear error.").

2.     Mitchell's Account Confirms that He Withdrew The
       Final Offer After Plaintiff's Counsel Rejected It

Recognizing the glaring admission in his own counsel's account, plaintiff now tries to use Mitchell's account of the final conversation to make his case (Pl. Br. 19-22). Specifically, he argues that Mitchell's remark "that I wanted to hear from the jury before having any further settlement talks" was ambiguous and could not effectuate a revocation of the Final Offer. This argument is meritless for several

26

reasons, the first of which is that it cherry-picks Mitchell's account by ignoring plaintiff's counsel's numerous rejections[11] of the Final Offer hours before their final conversation.

Mitchell conveyed the Final Offer to plaintiff's counsel at 2:32 p.m. on Friday, February 16, 2024, shortly after the jurors began deliberating. Plaintiff's counsel immediately rejected it by counteroffer (A2820). See Okemo Mountain v. Okemo Trailside Condominiums, 139 Vt. 433, 435 (1981) (holding that under Vermont law acceptance of an offer must be unconditional and a counteroffer constitutes rejection). Two hours later, the jurors asked for a readback of the only accident eyewitness's testimony and for clarification of the interplay between the Vermont Sports Injury Statute and defendants' negligence (Mitchell Dec. para. 4). Mitchell sensibly believed that this was "a positive development for defendants" (A2820-21). But plaintiff's counsel rejected the Final Offer again, this time to another of defendants' insurance representatives (Joy Posner), by "continu[ing] to seek a settlement higher than the Final Offer"[12] (A2821). Despite plaintiff's counsel's rejections, however, Mitchell remained in the courthouse in case counsel wanted to discuss settlement (A2821).

---

[11] Plaintiff fancifully characterizes his rejections as "struggling with whether to accept the Final Offer" (Pl. Br. 27).

[12] Plaintiff's argument that Joy Posner renewed the Final Offer during her conversation with plaintiff's counsel is of no moment because, even if true, counsel immediately rejected it by counteroffer.

Finally, around 8:20 p.m., the jury sent an impasse note. After the trial court gave the jury an <u>Allen</u> charge, Mitchell and plaintiff's counsel had their final conversation. Mitchell did not renew the Final Offer or indicate that it was available (A2821). Instead, Mitchell withdrew it and ended settlement discussions by telling plaintiff's counsel that he wanted to "hear from the jury before having any further settlement talks" and leaving the building (A2821). He did this because he believed a defense verdict was imminent (A2821). Mitchell added that he would be available by phone and would remain in town until the next morning to "continue negotiations in the event of a hung jury" (A2821).

In sum, after plaintiff's counsel twice rejected the Final Offer by counteroffer, Mitchell explicitly withdrew it, ended settlement negotiations, and told plaintiff's counsel that he would continue said negotiations only if the jury remained deadlocked. There is no ambiguity in these words or conduct. The record is clear that Mitchell withdrew the Final Offer (that plaintiff had already twice rejected) and ended negotiations because he believed a defense verdict was forthcoming. Moreover, and critically, plaintiff's counsel understood this – he knew that settlement negotiations were over for as long as the jury continued deliberating, which is why he asked whether Mitchell would consider resuming them if the jury turned out be deadlocked. Smiley's words and conduct reveal that he knew

28

Mitchell's position well and is only now pretending not to have done so as a litigation tactic.

Against this factual backdrop, the meaning of Mitchell's comment that he "wanted to hear from the jury before having any further settlement talks" is clear. Indeed, despite insisting that this statement "can be subject to numerous interpretations," plaintiff specifies neither the contrary meaning he believed it had nor another reasonable interpretation (Pl. Br. 20). Rather, he insists that it is ambiguous because Mitchell could have made the withdrawal more explicit by using the words "withdrew" or "revoked" (Pl. Br. 19-20, 26). But the law does not require magic words to revoke an offer, only a statement or act that clearly conveys the offeror's intent to revoke. See Restatement 2d of Contracts, § 42, comment d ("*What constitutes revocation.*  The word 'revoke' is not essential to a revocation. Any clear manifestation of unwillingness to enter into the proposed bargain is sufficient."). Here, Mitchell did both. And, of course, the fact that Mitchell did not phrase his revocation in such formalistic terms proves only that he did not anticipate defendants becoming ensnared in litigation over an invented *post hoc* settlement to which he never agreed.

At any rate, the record establishes that either (1) plaintiff's counsel rejected the Final Offer repeatedly as the jury deliberated and Mitchell withdrew it during their final conversation, or (2) Mitchell renewed the Final Offer during their final

conversation with the proviso that it would remain open only while the jury continued deliberating. There is no third option and, therefore, no genuine dispute that the Final Offer was not available at the time plaintiff's counsel tried to accept it (after the Verdict Note). Under both versions, the Final Offer was either withdrawn or lapsed by the Verdict Note.

Plaintiff's counsel's conduct after the Verdict Note confirms his understanding that Mitchell had withdrawn the Final Offer: he attempted to telephone Mitchell to see if the Final Offer could be renewed. Had he believed it was still available, he simply would have text messaged his acceptance and informed the trial court of the settlement agreement; if defendants or the trial court had insisted on hearing the verdict, he would have moved to enforce the settlement. Had a settlement existed, the last thing that Smiley would have done is the exact thing he did: proclaim that no settlement existed and agree to hear the verdict.

B.    The Caselaw That Plaintiff Cites Is Inapplicable

Plaintiff's contractual argument rests on the eminently distinguishable Yaros, supra. Again, the plaintiff in Yaros accepted an offer with no expiration time before the jury was charged and plaintiff's counsel immediately advised both the trial court and defense counsel of the acceptance. Yaros, at P3. Even in the version of events most charitable to plaintiff here (which is not the applicable standard), Mitchell specified a condition precedent to acceptance (continued jury deliberation) that had

ended by the time of plaintiff's attempted acceptance. In <u>Yaros</u>, by contrast, the offeror's attorney told his adversary to "get back to [him]" after conveying the offer and ending the conversation. It was because of this open-ended instruction that the Pennsylvania Superior Court found that the offer did not lapse at the end of the conversation and remained open until the offeree's attorney responded. Here, Mitchell did not make an analogous statement expressing an intent to hold the Final Offer open indefinitely beyond his final conversation with plaintiff's counsel.

The distinctions do not end there. Whereas the <u>Yaros</u> plaintiff accepted the offer during closing arguments – seventy minutes after the offeror made it – plaintiff here attempted to accept the Final Offer nearly seven hours after Mitchell made it. More importantly, however, the <u>Yaros</u> plaintiff moved to enforce the settlement before the jury started deliberating and once it became clear that the defendant was reneging on the agreement. The opposite happened here – plaintiff told the trial court that there was no settlement, agreed to hear the verdict, and only conjured the instant *post hoc* settlement after the defense verdict. There is no material similarity between <u>Yaros</u> and the present case and the fact that plaintiff's nationwide search for a comparable case yielded only this proves that there is no decision in existence supporting the relief he seeks.

Plaintiff's reliance on <u>Wal-Mart Stores Tex. LLC v. Shirey</u> is misplaced for the same reason. There, Wal-Mart's attorney emailed a settlement offer to plaintiff's

31

attorney that would expire on March 31, 2017, at 3:00 p.m. After Wal-Mart obtained summary judgment dismissing plaintiff's complaint on March 30, plaintiff accepted Wal-Mart's settlement offer, which Wal-Mart refused. The court rejected Wal-Mart's argument that the summary judgment decision revoked its offer because the offer email only specified expiration if the court denied Wal-Mart's summary judgment motion, but did not specify expiration/revocation if Wal-Mart's motion prevailed. Wal-Mart Stores Tex. LLC v. Shirey,Tex. App. LEXIS 945 at 1-3 (Tx. Ct. App. 2020).

The present case is distinguishable because (1) plaintiff's counsel repeatedly rejected the Final Offer and (2) Mitchell withdrew the Final Offer during his final conversation with plaintiff's counsel or, at minimum, (3) Mitchell specified a condition precedent to acceptance that had ended when plaintiff tried to accept the Final Offer. Wal-Mart would only be analogous if Mitchell had specified a time at which the Final Offer would lapse and later maintained that an intervening event revoked the offer before the specified time. This did not happen here. Rather, the condition precedent to acceptance ended.

Plaintiff insists that defendants' condition precedent argument "is plainly contrary to the record and unsupported by the caselaw," but cites no case to refute it (Pl. Br. 26). This is because it is based on an elementary canon of offer and acceptance and gives full meaning and effect to Mitchell's words, as plaintiff's own

counsel retells them, which is what the law requires. See, e.g., State v. Philip Morris USA Inc., 183 Vt. 176, 183 (2008) ("[W]e interpret contracts to give effect to the parties' intent, which we presume is reflected in the contract's language when that language is clear. We also strive to give effect to every part of the instrument and form a harmonious whole from the parts.") (citations and quotations omitted); Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1986) ("To discern that intent a court must look to the words and deeds [of the parties] which constitute objective signs in a given set of circumstances.") (alteration in original) (internal quotations omitted); see also Quenneville v. Buttolph, 175 Vt. 444, 453 (2003) (the intent of the parties is "to be determined by examining the objective words and deeds of the parties").

Given the foregoing, the District Court rightly concluded that the elements of contract formation, including the requisite meeting of the minds, are absent here. The Court should affirm this holding.

## POINT III

## THERE IS NO BASIS FOR AN EVIDENTIARY HEARING

Despite passing on the opportunity for an evidentiary hearing before the District Court, plaintiff now seeks remand for a hearing to determine "whether a valid offer was accepted by plaintiff" (Pl. Br. 54). The Court should reject this request for several reasons.

33

First, as plaintiff acknowledges in the first sentence of this argument point, he waived the request for an evidentiary hearing to the District Court (A2862 ["With the parties' agreement, [the District Court] was satisfied with the declarations and the transcripts. [The District Court] didn't foreclose [the parties] from putting lawyers on witness stands and doing directs and cross-examinations, but neither of the parties requested that, [and] so the record before the Court is complete"]). Plaintiff repeated this waiver during oral argument by inviting the District Court to "weigh the credibility of the declarations," and render a decision without holding a hearing (A2913).While defendants made the same initial request, they waived it as well (A2682).

Second, a hearing is unnecessary. No additional evidence is required to resolve whether judicial estoppel precludes plaintiff's settlement enforcement motion. The trial transcript conclusively establishes that plaintiff reversed his prior position, on which the District Court relied, and gained an unfair advantage in doing so. All the elements of the doctrine are satisfied and plaintiff has identified no additional evidence that would alter this analysis. The District Court's judicial estoppel holding obviates the hearing that plaintiff seeks.[13]

---

[13] Plaintiff's waiver of this argument likewise obviates a hearing. See Point IV *infra*.

Third, there is no material issue of fact requiring a hearing. Both Smiley's and Mitchell's accounts indicate that the Final Offer was unavailable after the Verdict Note. Because both versions sustain the District Court's conclusion that there was "no meeting of the minds and no settlement for the court to enforce" (A2921),[14] an evidentiary hearing would be nothing more than a fishing expedition. As plaintiff concedes in his brief, "plaintiff's decision not to request such a hearing was predicated on his belief that the issue could be decided as a matter of law based on the undisputed facts on this record" (Pl. Br. 55). We agree.

Plaintiff erroneously claims that the District Court found "an issue of fact concerning whether there was a valid settlement" (Pl. Br. 54-55). It found no such thing. Rather, the District Court correctly observed that "it is disputed whether the final settlement offer was withdrawn before [Mr. Mitchell left the courthouse]" (Decision p. 2). But this is an immaterial factual dispute because even if Mitchell did not withdraw the Final Offer before leaving the building, plaintiff's counsel had already twice rejected it and Mitchell did not renew it. Alternatively, in plaintiff's counsel's account, Mitchell conditioned the Final Offer on continued jury deliberations, which ended at the Verdict Note. The only material fact, therefore, is

---

[14] During oral argument, the District Court found "no evidence" of a "firm offer and acceptance and an unequivocal settlement agreement" because it could not think of "any reasonable reason why Mr. Mitchell would leave the building if they were engaged in ongoing settlement negotiations" (A2916-17).

35

that the Final Offer was unavailable at the Verdict Note (either by rejection, withdrawal, or lapse). There is no version in which an open offer existed after the Verdict Note.

Given this record, the District Court correctly found that neither account supports an enforceable settlement agreement. This Court should reject plaintiff's unpreserved request for an evidentiary hearing accordingly.

## POINT IV

### PLAINTIFF WAIVED HIS CLAIM OF AN ENFORCEABLE SETTLEMENT AGREEMENT

While the District Court did not reach defendants' waiver argument, this Court can affirm the lower court's decision on this basis. Indeed, "[i]t is well settled that [this Court] may affirm a district court's decision on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." CBF Industria de Gusa v. AMCI Holdings, Inc., 850 F.3d 58, 78 (2d Cir. 2017) (citation and quotation marks omitted, cleaned up).

It is well settled that, "[u]nder either federal or Vermont law, waiver is the intentional relinquishment of a known right or privilege." Gonyea v. John Hancock Mut. Life Ins. Co., 812 F.Supp.445 (D. Vt. 1992). Waiver occurs when a party "intentionally relinquishe[s] or abandon[s]" an argument. Puckett v. United States, 556 U.S. 129 (2009); see also Am. Home Assur. Co. v. A.P. MollerMaersk A/S, 609 Fed.Appx. 662 (2d Cir. 2015) (noting that a waiver means that "the relinquishment

36

was knowing and intelligent; <u>United States v. Bayless</u>, 201 F.3d 116, 127 (2d Cir. 2000) (”); "[w]aiver is a renunciation[,] whether expressly through words or implicitly through behavior[,]" of a known right). A party can also waive an argument "by failing to raise it in a timely manner." <u>Sompo Japan Ins. Co. of Am. v Norfolk S. Ry.</u>, 762 F.3d 165, 176 (2d Cir. 2014). It is considered a "true waiver" when a party *"consciously refrains from objecting as a tactical matter."* <u>United States v. Yu-Leung</u>, 51 F.3d 1116, 1122 (2d Cir. 1995).

"To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." <u>Morgan v. Sundance, Inc.</u>, 142 S.Ct. 1708, 1713 (2022). There is no question that plaintiff waived his current settlement position before the verdict. Instead of raising this argument, plaintiff effectuated a three-fold waiver of same: (1) he failed to object to defendants' purported withdrawal of the Final Offer; (2) he denied to the trial court that an enforceable settlement agreement existed; and (3) he agreed to hear the verdict without objection (A2684-2687). Plaintiff did so voluntarily and with full awareness of the consequences of this waiver, as he "[was] represented by [a team of] sophisticated counsel, and [he] had ample opportunity properly to pursue the argument during these protracted proceedings…[but] [f]or [his] own reasons [he] opted not to do so." <u>Motorola Credit Corp. v. Uzan</u>, 509 F.3d 74, 88 (2d Cir. 2007).

Because plaintiff opted not to raise his claim of an enforceable settlement agreement *before* the jury's verdict, when the trial court and parties could have addressed the issue, he waived it. Should the Court find the preceding arguments unpersuasive, it should deny plaintiff's appeal on this basis.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should affirm the District Court's order in its entirety.

Dated: New York, New York
      December 19, 2024

                            Respectfully submitted,

                            **KAHANA & FELD, LLP**

                            By: Michael J. Curtis, Esq.
                            *Appellate Counsel for*
                            *Defendants-Respondents*
                            800 Third Avenue, 16th Floor
                            New York, NY 10022
                            (914) 787-9239
                            mcurtis@kahanafeld.com

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,916 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.

Dated: New York, New York
     December 19, 2024

               Respectfully submitted,

               **KAHANA & FELD, LLP**

               By: Michael J. Curtis, Esq.
               *Appellate Counsel for*
               *Defendants-Respondents*
               800 Third Avenue, 16th Floor
               New York, NY 10022
               (914) 787-9239
               mcurtis@kahanafeld.com